[Crim. No. 23438. Sept. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES SUMSTINE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Nancy Ann Stoner, Deputy State Public Defender, for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence A. Sarnoff and Chloris A. deBrauwere, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

Thomas W. Sneddon, Jr., District Attorney (Santa Barbara), and Gerald McC. Franklin, Senior Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

### Opinion

**MOSK, J.**—This case presents the issue whether a defendant whose sentence has been enhanced because he suffered a prior conviction may collaterally attack the validity of that conviction by moving to strike on the ground of a *Boykin/Tahl* violation.

In *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the United States Supreme Court held that even if a defendant is represented by an attorney, a court may not accept a guilty plea from him until it determines both that he is aware of the constitutional rights waived by pleading guilty—namely, the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront his accusers—and that he has knowingly and voluntarily chosen to waive those rights. Subsequently, in *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], we interpreted the refusal of the majority in *Boykin* to presume waiver of the three enumerated rights from a silent record to mean that the record must show *on its face* that the defendant was made aware of his rights and that he expressly waived them.

The defendant here maintains that a prior conviction must automatically be stricken if the record of that conviction is silent regarding the preservation of his *Boykin/Tahl* rights. We hold rather that a defendant may move to strike a prior conviction on *Boykin/Tahl* grounds, but it is not enough for him to allege that the record of his prior conviction is silent regarding those rights. He must affirmatively allege that at the time of his prior conviction he did not know of, or did not intelligently waive, such rights. And this does not end the matter: once such an allegation is made, the court must hold an evidentiary hearing of the type set forth in *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], to determine the truth of the allegation.

In February 1982 defendant was charged in Ventura County with nine counts of committing a lewd and lascivious act on a child under the age of 14. (Pen. Code, § 288, subd. (a).) The information also alleged that in July 1974 he had been convicted in Kern County of the same offense. He initially entered a plea of not guilty and denied the prior, but pursuant to a negotiated disposition he later pleaded guilty to three of the counts. He agreed that the trial court could read the preliminary hearing transcript to establish a factual basis for the alleged offenses, and he admitted the factual basis of the prior, reserving the right to challenge its constitutional validity.

At the sentencing hearing he presented the following motion to strike the prior: "This challenge is directed at the Kern County court's complete fail-

ure to make a record showing that the plea was knowing, intelligent and voluntary. Nor is there a record to show that the defendant was informed of his rights to jury trial, confrontation of witnesses, silence and presentation of evidence. Finally the defendant was not informed of the consequences of his plea." He cited both *Boykin* and *Tahl.*[1]

In ruling on this motion the court felt constrained by *People* v. *Reeves* (1981) 123 Cal.App.3d 65 [176 Cal.Rptr. 182]. In *Reeves,* the Court of Appeal concluded that defendants may not raise *Boykin/Tahl* issues in motions to strike priors because *People* v. *Coffey, supra,* 67 Cal.2d 204, "apparently limited use of the motion to strike to situations where a defendant clearly alleged that 'he neither was represented by counsel nor waived the right to be so represented.'" (*People* v. *Reeves,* at p. 68.) Since what little record exists of defendant's 1974 conviction confirms that he had been represented by counsel, the court denied the motion. The court thereupon sentenced defendant to ten years in state prison: seven years on count I of the current charges and three additional years for the prior.[2] ▮▮▮ ▮ Defendant filed an appeal contesting the denial of his motion to strike and the enhancement of his sentence by three years.[3]

▮ *Coffey,* decided two years before *Boykin* and *Tahl,* dealt with a claim by a defendant that a conviction obtained against him in 1949 was invalid because he had been denied his constitutional right to the assistance

---

[1] Defendant's claim that he "was not informed of the consequences of his plea" apparently focuses on our declaration in *Tahl* that "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (1 Cal.3d at p. 132.) The claim is phrased in such a way that in certain contexts it might be read as an affirmative allegation of denial of constitutional rights, i.e., he did not know the consequences of his plea. But in this context, where the rest of his motion refers only to the silence of the record and his briefs do not distinguish between his claims, we believe that defendant is relying here, as elsewhere, solely on the silence of the record. Thus we find no need to treat this allegation separately.

[2] His sentence was enhanced in compliance with the terms of Penal Code section 667.5, which provides in relevant part: "(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c) .... [¶] (c) For the purpose of this section, 'violent felony' shall mean any of the following: ... [¶] (6) Lewd acts on a child under 14 as defined in section 288."

Defendant was also sentenced to five years each on counts II and V of the current charges, the terms to be served concurrently with that imposed on count I and with each other.

[3] He failed to obtain from the trial court a certificate stating that probable cause exists for an appeal. Such a certificate is normally required before a defendant may appeal from a conviction based on a plea of guilty. (Pen. Code, § 1237.5.) But the formal requirements of Penal Code section 1237.5, do not apply where, as here, the defendant is not challenging the validity of his guilty plea but is alleging error in the sentencing proceedings following entry of the plea. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881]; *People* v. *Pinon* (1979) 96 Cal.App.3d 904, 910 [158 Cal.Rptr. 425].)

of counsel. (67 Cal.2d at p. 210.) In a pretrial motion he sought to have the portion of the information charging him with this prior conviction stricken. He filed the 1949 minute entry, which indicated that he represented himself at the time he entered a guilty plea. He also filed points and authorities "which stated that he· 'was indigent at the time of his plea,' that 'he did not understand his right to counsel,' and that he 'did not clearly and expressly and intelligently waive his right to counsel.'" (*Ibid.*) The trial court denied the motion without a hearing on the ground that it was irregular, i.e., that there was no statutory authority for such a motion.

We reversed the ensuing conviction on another ground, and for the guidance of the court on retrial we explained that the defendant had the right to challenge his prior conviction by means of a motion to strike. We reasoned, "to the extent that statutory machinery relating to penal status or severity of sanction is activated by the presence of prior convictions, it is imperative that the constitutional basis of such convictions be examined if challenged by proper allegations. [Citations.] . . . 'To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions . . . necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions.' [Citations.] . . . [¶] We emphasize, however, that the issue must be raised by means of allegations which, if true, would render the prior conviction devoid of constitutional support. 'One seeking to challenge prior convictions charged against him may do so only through a clear allegation to the effect that, in the proceedings leading to the prior conviction under attack, he *neither was represented by counsel nor waived the right to be so represented.*' (Original italics.) (*People v. Merriam* (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161].)" (*Id.,* at pp. 214-215.)

It was the italicized portion of the quotation from *Merriam* that the Court of Appeal in *Reeves* read as limiting motions to strike priors to allegations raising right to counsel issues.[4] Such a reading of *Coffey* is unduly strained.

---

[4]The Courts of Appeal have split on the application of *Coffey* to *Boykin/Tahl* issues raised on motions to strike priors. Their approaches have been various, but in general the cases authorizing collateral attack by way of a motion to strike on *Boykin/Tahl* grounds include: *People* v. *Trout* (1983) 145 Cal.App.3d 812 [193 Cal.Rptr. 748]; *People* v. *McFarland* (1980) 108 Cal.App.3d 211 [166 Cal.Rptr. 429]; *People* v. *Buller* (1979) 101 Cal.App.3d 73 [160 Cal.Rptr. 657]; *Youkhanna* v. *Municipal Court* (1978) 86 Cal.App.3d 612 [150 Cal.Rptr. 380]; *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522 [145 Cal.Rptr. 636]; *Stewart* v. *Justice Court* (1977) 74 Cal.App.3d 607 [141 Cal.Rptr. 589]; *Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891 [111 Cal.Rptr. 126]; *Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706 [108 Cal.Rptr. 612]; *Cooper* v. *Justice Court* (1972) 28 Cal.App.3d 286 [104 Cal.Rptr. 543]. The cases holding that the *Coffey* procedure is limited strictly to attacks on the validity of prior convictions based on the denial of the right to counsel include: *People* v. *Reeves* (1981) 123 Cal.App.3d 65 [176 Cal.Rptr. 182]; *People* v. *Lewis* (1977) 74 Cal.App.3d 633 [141 Cal.Rptr. 614]; *People* v. *Superior Court (Gauld-*

By focusing on that one phrase the *Reeves* court failed to consider the preceding words that clearly imply a defendant may bring *any* challenge that undermines the constitutional basis of his prior conviction.

The quotation from *Merriam* does not deal with *what* challenges may be brought, but *how* they may be brought. The defendant in *Merriam* sought to challenge a prior conviction by alleging that " 'the record is silent on the issue of appellant's representation or waiver of counsel at the time of the prior conviction.' " (66 Cal.2d at p. 396.) We found this allegation wanting, and thus held that if a defendant challenges a prior on the issue of representation by counsel, it is not sufficient to claim that the record is silent on the issue; he must affirmatively allege that his right to counsel was denied. (*Id.*, at p. 397.) That we quoted *Merriam* only for the specific purpose of setting out the standard for determining the sufficiency of an allegation can be seen by reading the paragraphs following the disputed quotation: those paragraphs consider the Attorney General's contention that the defendant in *Coffey* did not present an allegation sufficient under *Merriam*. (67 Cal.2d at pp. 215-217.)

Ignoring the purpose of the *Merriam* quotation, respondent insists that *Coffey* limited motions to strike priors to allegations involving the issue of representation by counsel because in that opinion we did not discuss other constitutional rights of defendants. He admits that defendant Coffey did not raise any issues other than denial of the right to counsel, but he maintains that *Coffey* is nevertheless precedent for constitutional issues not discussed because the court "was aware that future defendants might try to raise constitutional challenges other than right to counsel and yet . . . made no provision for such challenges." In addition to presenting the novel theory that this court establishes precedent by refusing to employ a dictum, respondent misperceives the nature of the challenges available to defendants at the time of *Coffey*.

In the pre-*Boykin* era, a defendant who pleaded guilty to an offense could challenge his conviction by alleging a denial of the right to counsel, but could not separately allege denial of the privilege against self-incrimination, the right to trial by jury, or the right to confront his accusers. As we explained in detail in *Tahl*, pre-*Boykin* law on the acceptance of guilty pleas focused on the presence or absence of an attorney. If the defendant had an attorney, "courts have generally assumed, in the absence of evidence to the contrary, counsel will perform his duty as an advocate and an officer of the

*en)* (1977) 66 Cal.App.3d 773 [136 Cal.Rptr. 229]; *People* v. *Vienne* (1973) 30 Cal.App.3d 266 [105 Cal.Rptr. 584]. Other courts have suggested time limitations on motions to strike based on alleged *Boykin/Tahl* violations. (See *People* v. *Gage* (1981) 126 Cal.App.3d 918 [179 Cal.Rptr. 171]; *People* v. *Davis* (1980) 103 Cal.App.3d 270 [163 Cal.Rptr. 22].)

court to inform the accused of and take steps to protect the other rights afforded by the law . . . ." However, if the defendant had no attorney, the courts, while not assuming "that the accused will be 'sufficiently articulate and adequately conversant with his constitutional and legal rights . . .'," were required to determine only whether the accused was informed of his right to counsel and waived that right. (*Tahl, supra,* 1 Cal.3d at pp. 129.)[5] Thus, even though no other rights but the right to counsel were discussed in *Coffey,* the court was impliedly seeking to protect the defendant's other constitutional rights indirectly by protecting his right to counsel.

*Boykin* changed all that. The defendant in *Boykin* had an attorney, but the United States Supreme Court held the mere presence of an attorney was not sufficient to establish that the defendant's guilty plea was intelligent and voluntary. The trial court itself must canvass "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (395 U.S. at p. 244 [23 L.Ed.2d at p. 280].) Thus even if we had held in *Coffey* that motions to strike priors were limited to denial of the right to counsel, we would have had to rethink our approach following *Boykin.* If we could once have assumed that by protecting a defendant's right to counsel we were preserving his other rights, we could no longer have so assumed.

Yet respondent contends that if we do reexamine *Coffey,* we should now limit it to right to counsel claims because of the peculiar importance of the Sixth Amendment right to counsel. Although it is true that in some contexts principled distinctions have been made among the various guarantees of the Bill of Rights, respondent suggests no reason for distinguishing in this context the right to counsel from the rights protected in *Boykin/Tahl,* other than the rationale of pre-*Boykin* cases that the "right to be represented by counsel is so pervasive that it affects a defendant's ability to assert whatever other rights he may have . . . ."

We would be the last court to diminish the importance of the right to counsel. Nevertheless, in *Tahl* we decided that when a defendant pleads guilty the preservation of his right to counsel does not alone insure that his other constitutional rights have been protected. This conclusion, coupled with our concern in *Coffey* that prior convictions obtained in violation of any of a defendant's constitutional rights not be used to enhance a prison

---

[5]In *People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583], we reaffirmed the longstanding requirement of an express waiver of the right to jury trial. But this was in the context of a case that had actually gone to trial. When a case did not go to trial because the defendant entered a guilty plea, "prior to *Boykin* v. *Alabama* . . . it was not necessary that acceptance of a guilty plea be preceded by a specific waiver of the right to a jury trial . . . ." (*Tahl, supra,* 1 Cal.3d at p. 129, fn. 4.)

sentence, militates against allowing a defendant to challenge a prior conviction on the ground that it was obtained in violation of his right to counsel but not on the ground that it was obtained in violation of other constitutional rights. A *Boykin/Tahl* challenge is equally permissible.[6]

■ Having decided that a motion to strike prior convictions on *Boykin/Tahl* grounds should be allowed, we must next consider what procedural limitations are to be placed on such motions. Respondent contends we should disallow motions to strike priors if they are untimely. He cites *People* v. *Lewis* (1977) 74 Cal.App.3d 633, 640 [141 Cal.Rptr. 614], which affirmed a denial of a motion to strike, stating, "Furthermore, the prior was over four years old, and appellant made no showing whatsoever that he had ever attempted to attack or set aside the plea in a timely or appropriate manner, or that he had an excuse for failing to do so. (*In re Ronald E.*, 19 Cal.3d 315, 321-323 [137 Cal.Rptr. 781, 562 P.2d 684].) In the absence of such showing, the alleged infirmity in the prior was waived and could not be collaterally attacked. (*In re Ronald E., supra*, at p. 322.)" (Fn. omitted.)

The *Lewis* court misconstrued the import of *Ronald E.* In that case we were not dealing with a limited objection to the use of a prior for enhancement purposes, but with a broad challenge to the validity of a conviction for any purpose. The petitioner in *Ronald E.* sought to be released on habeas corpus from detention by the Youth Authority. He was challenging the juvenile court's handling of his *Boykin/Tahl* rights not at the hearing on some previous conviction, but at the hearing on the charges for which he was currently confined. We refused to grant the writ, saying that "petitioner is no longer entitled to raise on petition for the writ of habeas corpus the issue of improprieties in proceedings resulting in detention which he has accepted without timely challenge." (19 Cal.3d at p. 321.) This result was not novel.

---

[6]We therefore disapprove *People* v. *Reeves, supra*, 123 Cal.App.3d 65, *People* v. *Lewis, supra*, 74 Cal.App.3d 633, *People* v. *Superior Court (Gaulden), supra*, 66 Cal.App.3d 773, and *People* v. *Vienne, supra*, 30 Cal.App.3d 266, to the extent they limit motions to strike to attacks alleging denial of the right to counsel.

Respondent raises the possibility that allowing *Boykin/Tahl* challenges on motions to strike would be unnecessarily time-consuming. "To explore matters other than the easily determined fact of representation by, or waiver of, counsel could—and no doubt would—require a lengthy recess of the trial in order to procure witnesses and other evidence with the resultant possibility of frequent declaration of mistrials." (*People* v. *Vienne, supra*, 30 Cal.App.3d at p. 272.) To prevent such lengthy interruptions we required courts to put on the record the questioning of the defendant concerning his *Boykin/Tahl* rights in order to preserve "a record adequate for *any* review that may be later sought." (*Boykin, supra*, 395 U.S. at p. 244; italics added.) If a proper record existed, *Boykin/Tahl* claims could as easily be determined as right to counsel claims. Furthermore, we have never limited the *Coffey* procedure to constitutional claims raising only simple issues easily determined on the face of the record. For example, we have permitted defendants to raise inadequate assistance of counsel on a *Coffey* motion. (*People* v. *Coleman* (1969) 71 Cal.2d 1159, 1169 [80 Cal.Rptr. 920, 459 P.2d 248].)

We arrived at it simply by applying standard rules of habeas corpus law to petitions for habeas corpus raising *Boykin/Tahl* issues. ■ As we stated in *In re Walker* (1974) 10 Cal.3d 764, 773 [112 Cal.Rptr. 177, 518 P.2d 1129], "The general rule is that 'habeas corpus cannot serve as a substitute for appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.' [Citations.]"

■ That is an accurate statement of the law of habeas corpus, but it is not an accurate statement of the law of motions to strike priors. In *Coffey,* although the defendant sought to challenge a prior obtained against him more than 15 years earlier, we gave no hint that his motion could have been rejected as untimely.[7] Rather, we addressed the issue of timeliness in another sense. Previously we had allowed a defendant to challenge a prior by seeking a writ of habeas corpus *after* a final judgment in which the prior had been used to enhance his sentence. (*In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Luce* (1966) 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker* (1966) 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921].) But in *Coffey* we decided that "it is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court." (67 Cal.2d at p. 215.)

■ The reason for this distinction between the rules governing habeas corpus and the rules governing motions to strike can be seen by examining the effects of the two different procedures. When the issuance of a writ of habeas corpus vacates the underlying judgment of conviction, the judgment ceases to exist for all purposes. After the writ has issued, the state can seek in some circumstances to retry the defendant on the underlying charges (see Witkin, Cal. Criminal Procedure (1963) Habeas Corpus and Other Extraordinary Writs, § 827, pp. 791-792); due diligence and timeliness are therefore properly required, because tardy petitions hinder the state's ability to effectively present its case anew.

On the other hand, motions to strike do not vacate the underlying conviction: "The striking of an allegation of a prior conviction from the complaint in a pending criminal proceeding is not the equivalent of a determination

---

[7]In fact, we permitted Coffey to raise the issue of the denial of his right to counsel even though the appellate court of the state in which he had been previously convicted decided against him on this very issue soon after his incarceration. (67 Cal.2d at p. 210, fn. 5.)

that the defendant did not, in fact, suffer the conviction [citation]. . . . [T]he defendant must continue to fulfill the conditions of the sentence imposed upon him as a result of the prior conviction unless he successfully moves to vacate or set aside the judgment in the original action . . . ." (*Gonzalez v. Municipal Court* (1973) 32 Cal.App.3d 706, 712, fn. 9 [108 Cal.Rptr. 612]; see *In re Rogers* (1980) 28 Cal.3d 429, 438 [169 Cal.Rptr. 222, 619 P.2d 415].) ▉ The purpose of a motion to strike is to challenge only the present effect of the prior conviction. As the state is the party proposing to assert the effect of the prior conviction at the current trial, the state should also be prepared to face challenges to it.[8]

▉ Thus defendant's motion is timely; the issue is whether it is sufficient. The motion focuses mainly on the silence of the record, and indeed the record is woefully inadequate concerning the steps taken to preserve defendant's *Boykin/Tahl* rights. At one time the record may have been adequate, because reporter's notes of the arraignment existed. But those notes no longer exist; apparently they were eliminated by Kern County pursuant to Government Code section 69955, subdivision (d), which permits county clerks to destroy reporter's notes after five years. What remains is a poor substitute. In nine pages of documents setting forth in detail the charges against defendant and the results of the hearing at which he pleaded guilty and subsequent hearings to determine if he was a mentally disordered sex offender or if he was eligible for probation, only twice is there any mention of efforts taken to preserve his constitutional rights. On the arraignment form are two categories to be checked off by the clerk preparing the form. One paragraph notes, "Defendant(s) arraigned and informed of _____ constitutional rights"; the other provides "Counsel waives reading of complaint and informing defendant of____his____ constitutional rights." An X is marked in the box next to the latter; no X appears in the box beside the former.

This record clearly fails to meet the guidelines established in *Tahl*. ▉ There we required that "each of the three rights mentioned [in *Boykin*]— self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea." (1 Cal.3d at p. 132.) We prescribed this requirement not only to make certain that trial courts took care to preserve defendants' constitutional rights, but also to insure that appellate courts would not have to resolve claims of denial of *Boykin/Tahl* rights without "a record adequate for any review that may be later sought." (*Boykin, supra,*

---

[8]We therefore disapprove *People* v. *Gage, supra,* 126 Cal.App.3d 918, and *People* v. *Davis, supra,* 103 Cal.App.3d 270, to the extent they suggest that motions to strike are governed by the same rules of timeliness as habeas corpus petitions.

395 U.S. at p. 244.) "At stake is the protection of both the accused and the People, the latter by the assurance that an otherwise sound conviction will not fall due to an inadequate record." (*Tahl, supra,* 1 Cal.3d at p. 132.)

█ The record here is entirely inadequate for purposes of review. Nowhere is there any affirmative indication that the court informed defendant of any of his constitutional rights. What little we can glean from the record suggests that the court did not so inform defendant; counsel apparently waived a reading of those rights. · █ █ This is permissible so long· as the court assures itself that counsel has informed defendant of his rights and inquires of defendant whether he has waived them (*Tahl, supra,* 1 Cal.3d at p. 133, fn. 6); but there is no indication here that counsel informed defendant of any of his rights, nor that the court asked defendant whether he waived them. Had defendant taken an appeal from this conviction and were the record as it stands today, the judgment would doubtlessly have been reversed.

Defendant contends that the determination on a motion to strike should be no different. He acknowledges, as he must, that such a result would not obtain if the evidentiary standards of *Coffey* applied, for an allegation that the record is silent is not an allegation "which, if true, would render the prior conviction devoid of constitutional support." (67 Cal.2d at p. 215.) Yet he contends that the *Coffey* standard does not apply to motions to strike on *Boykin/Tahl* grounds because of the *Tahl* requirement that the record must show express admonitions concerning self-incrimination, confrontation, and jury trial, and an express waiver of those rights.

We can see no reason why a defendant claiming denial of constitutional rights other than the right to counsel need make a lesser showing than. a defendant claiming denial of the right to counsel. The *Tahl* requirement of an express waiver did not change the burden of proof on all motions to strike on the ground of constitutional error. We did not intimate in *Tahl* that our requirement of an express waiver of rights was meant to change the law on right to counsel. In fact, we declared that the on-the-record examination we were requiring judges to make concerning a defendant's *Boykin/Tahl* rights was "in effect the type of inquiry long recognized in California as essential if the accused desires to proceed without counsel. (E.g., *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420]; *In re James* (1952) 38 Cal.2d 302 [240 P.2d 596]; *People* v. *Chesser* (1947) 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246].) Our holding today may thus be seen as an extension of the concepts first developed in those cases." (*Tahl, supra,* 1 Cal.3d at p. 133, fn. 7.)

█ We conclude that a defendant seeking to challenge a prior conviction on *any* ground must allege actual denial of his constitutional rights. █

This is not inconsistent with the *Tahl* requirement that the record show express advisement and waiver of rights. Having failed to appeal his initial conviction, the defendant is not unduly burdened by a demand that he now allege actual denial of his rights rather than rely on mere silence of the record.[9]

 Yet the silence of the record is not entirely without relevance. When a defendant has made allegations sufficient to justify a hearing, the court must conduct an evidentiary hearing in the fashion set forth in *Coffey*: "[T]he prosecutor shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant 'has suffered such previous conviction.' (Pen. Code, § 1025.) . . . [W]hen this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional [*Boykin/Tahl* rights were] infringed in the prior proceeding at issue. . . . [I]f defendant bears this burden, the prosecution shall have the right to produce evidence in rebuttal." (Fn. omitted.) (67 Cal.2d at p. 217.) The state at first need prove only the fact of the prior conviction, but once the defendant has produced evidence tending to show his constitutional rights were infringed, it will not be sufficient rebuttal for the state to simply invoke the regularity of the silent record.

 When examining official records, normally we are required to presume that official duty was performed. (*In re Woods, supra,* 64 Cal.2d at p. 7.) However, that presumption is not appropriate when the official records fail to meet minimum standards. The contrast between *Woods* and *In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179], is instructive. Both dealt with docket entries stating that the defendant had been "duly arraigned." In *Woods* we agreed to presume that due arraignment meant the defendant had been advised of his right to counsel, but in *Smiley* we refused to so presume. As we explained in *Smiley,* the difference in record-keeping requirements necessitated different results. The record in *Woods* was deemed valid because at the time of that defendant's arraignment a court was not required to spell out in detail on the record the advice it gave on the right to counsel. But courts were required to do so at the time of the arraignment of the defendant in *Smiley*; therefore records failing to enumerate the rights of which the defendant was actually advised could not be presumed to be regular. (*Id.* at pp. 616-617.)

 Since the advent of *Boykin* the courts of this state have been on notice that before they accept a guilty plea in a felony case they must make

---

[9]We therefore disapprove *Youkhanna* v. *Municipal Court, supra,* 86 Cal.App.3d 612, to the extent it holds that motions to strike are sufficient although they allege only the silence of the record.

a record that contains "*on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination . . . ." (*Tahl, supra,* 1 Cal.3d at p. 132.) ▮ The record before us is therefore not deserving of the presumption of regularity, because the arraignment occurred five years after *Boykin.*

Amicus curiae objects that to refuse to presume that the record is regular because of the absence of reporter's notes destroyed pursuant to legislative direction is to punish the county for doing what it is legally permitted to do. (See *In re Carlson* (1966) 64 Cal.2d 70, 75 [48 Cal.Rptr. 875, 410 P.2d 379].) But our decision does not penalize the county for failing to keep reporter's notes beyond the time required by law. Had defendant based his motion solely on the absence of the reporter's notes, it would have been rejected. Such is not the case here; the motion is based on the inadequacy of the record that does remain. We can see no reason to presume from this silent record that defendant's *Boykin/Tahl* rights were observed merely because the county at one time possessed a more complete record that purportedly might have resolved the issue.[10]

In conclusion, the trial court should not have denied defendant's motion to strike his prior conviction on the ground that it failed to allege denial of the right to counsel: as explained herein, motions to strike may also allege denial of *Boykin/Tahl* rights. Nevertheless, such allegations must be based on something other than the mere silence of the record. Defendant's allegation that the record is silent as to his "rights to jury trial, confrontation of witnesses, silence and presentation of evidence" and as to the voluntariness of his guilty plea is thus insufficient. It follows that the ruling must in any event be sustained.

The judgment is affirmed.

Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.**—I concur in the judgment, but respectfully dissent to the majority's reasoning. In my view, the collateral attack permitted by *People* v. *Coffey* (1967) 67 Cal.2d 204, 217 [60 Cal.Rptr. 457, 430 P.2d 15] should be limited to cases involving alleged denial of the fundamental right to counsel. Indeed, as the majority acknowledges, a substantial number of Court of Appeal cases have so held. (E.g., *People* v. *Reeves* (1981) 123 Cal.App.3d 65, 68-69 [176 Cal.Rptr. 182], and cases cited.) These cases

---

[10]Absence of an adequate record does not prevent the state from offering any proof it might have as to the rights of which defendant was informed. The state is always free to offer evidence intended to fill in gaps in the record. (See *In re Smiley, supra,* 66 Cal.2d at p. 617; cf. *In re Johnson* (1965) 62 Cal.2d 325, 331 [42 Cal.Rptr. 228, 398 P.2d 420].)

cite "the difficulty and lengthy delays in prosecution and trial of criminal cases which would result if [*Coffey*] were extended to matters 'other than the easily determined fact of representation by, or waiver of, counsel.' [Citation.]" (*Id.*, at p. 69.)

In the present case, unlike *Coffey*, we deal with a possible violation of certain technical procedural rules (the "*Boykin/Tahl*" rules) requiring specified advice and waivers prior to accepting a guilty plea. The majority's ruling herein will require a full evidentiary hearing whenever the defendant *alleges* noncompliance with these rules, allegations which presumably will be routinely made whenever the official record in the prior proceedings fails, as here, affirmatively to establish full compliance with *Boykin/Tahl*. Because the majority imposes on the defendant no time limitation or laches requirement, the People may have considerable difficulty proving such compliance. (Untranscribed notes of a guilty plea hearing evidently are often discarded after five years. See Gov. Code, § 69955, subd. (d).)

In my view, where defendant raises the supposed defect for the first time on collateral attack in a subsequent criminal proceeding, we should *conclusively* presume that the trial court performed its official duties, gave the requisite advice and obtained the requisite waivers prior to accepting the defendant's guilty plea.

I concur in affirmance of the judgment.

**BIRD, C. J.,** Dissenting.—I write separately because under the law a court must grant a motion to strike a prior if the record of that prior does not comply with *Boykin-Tahl*.

Presiding Justice Stone so ably pointed out why this is so in his opinion in the Court of Appeal. The relevant portion of his opinion is as follows:

"[P]rior to *Boykin-Tahl* the law in California held that if an accused person was represented by counsel at the time of a guilty plea it was presumed that counsel informed him of his constitutional rights in absence of evidence to the contrary[. T]he burden on [the] defendant to make a 'clear allegation' that his constitutional rights were infringed and to produce evidence thereof was removed by *Boykin* v. *Alabama* and *In re Tahl*. (See, *In re Tahl*, [(1969)], 1 Cal.3d 122, 127-129 [132-133].)

'In the case of *In re Tahl*, *supra*, 1 Cal.3d 122, [] *Boykin* [was construed] to require more than an inferential showing from the record that an accused waived his constitutional rights [1] to confront accusers, [2] to trial by jury, and [3] against compulsory self-incrimination. . . . [T]he court itself must

"specifically and expressly" enumerate each of his rights, "employ the time necessary to explain adequately and to obtain express waiver of the rights involved" prior to acceptance of a guilty plea, and *ensure that an adequate record be available for possible review.* [Citations.]' (*In re Yurko* (1974) 10 Cal.3d 857, 861 [112 Cal.Rptr. 513, 519 P.2d 561]. Italics added.)

*Salazar* v. *Municipal Court* (1975) 44 Cal.App.3d 1024 [119 Cal.Rptr. 98], cited by respondent for the proposition that appellant made insufficient allegations of constitutional deficiency of the prior conviction, held that the silent record was insufficient only because the prior conviction in *Salazar* was subject to law in existence 'before *Boykin-Tahl-Mills* mandated that the record itself must affirmatively indicate a guilty plea was voluntarily and intelligently entered . . . .' (44 Cal.App.3d at p. 1026.)

All that is necessary is that defendant give sufficient notice that he is challenging the alleged prior conviction on *Boykin-Tahl* grounds to enable the prosecution to obtain the necessary records. Once the appellant herein challenged the prior convictions by motion to strike on *Boykin-Tahl* grounds, the burden was on the prosecution to establish the facial sufficiency of the record as to the constitutional validity, i.e., that the record contained '*on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination[.] . . .' (*In re Tahl, supra,* 1 Cal.3d at p. 132.) They failed to do so. (See *People* v. *Guevara* (1980) 111 Cal.App.3d Supp. 19 [169 Cal.Rptr. 19].)

Either a prior conviction is constitutionally valid or it is not. . . . [U]nder *Boykin-Tahl* and their progeny, a record which fails to contain full admonishment and waivers of forfeited constitutional rights will suffice *in itself* to render a prior conviction unconstitutional[.] [Thus, the court must strike a prior whenever the record is silent as to any constitutional right.]

[T]he trial court erred in finding appellant's prior conviction constitutionally valid for sentence enhancement purposes[.]"

Appellant's petition for a rehearing was denied November 29, 1984.