Filed 5/6/15  P. v. Hemphill CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040140 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS091035A) |
| v. | |
| CURTIS ALLEN HEMPHILL, | |
| Defendant and Appellant. | |

Defendant Curtis Allen Hemphill is an inmate at Salinas Valley State Prison.  In November 2007, his cellmate, Louis Singleton, was found lying prone on the cell floor that he shared with defendant.  Singleton was pronounced dead and an autopsy showed strangulation as the cause.  Following a jury trial, defendant was convicted of voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and was sentenced to a term of 33 years in prison.

On appeal, his counsel has filed an opening brief in which no issues are raised and asks this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436.  Counsel has declared defendant was notified an independent review under *Wende* was being requested.  We advised defendant of his right to submit written argument on his own behalf within 30 days.  Defendant has submitted a letter brief requesting appointment of counsel and raising numerous issues.

---

[1] Further unspecified statutory references are to the Penal Code.

Pursuant to *Wende*, we have reviewed the entire record and have concluded that there are no arguable issues. We will provide "a brief description of the facts and procedural history of the case, the crimes of which defendant was convicted, and the punishment imposed." (*People v. Kelly* (2006) 40 Cal.4th 106, 110.) Pursuant to *Kelly*, we will consider defendant's letter brief and will explain why we reject his contentions. (*Id*. at p. 113.)

## FACTUAL AND PROCEDURAL BACKGROUND

*Procedural History*

On March 26, 2009, the Monterey County district attorney's office filed a complaint charging defendant with first degree murder (§ 187, subd. (a)). It was also alleged that defendant had a prior serious or violent felony conviction under section 1170.12, subdivision (c)(1).

Defendant's trial counsel filed a motion to exclude evidence of uncharged bad acts under Evidence Code sections 1101 and 352. He also filed a motion to bifurcate the trial of the sentencing enhancement from the substantive charge and a motion to strike all of defendant's prior convictions. Later, defendant waived his right to a jury trial on his prior convictions.

On September 28, 2011, the trial court held a hearing on defendant's motion to strike all of his prior convictions. Defendant's counsel argued the motion should be granted, because defendant did not validly waive his right to counsel in his prior case, the prior court failed to provide defendant with legal representation, and that defendant's guilty plea was obtained through fraud or coercion. The court denied the motion.

Trial began on February 27, 2012. The court granted defendant's motion to bifurcate the jury trial on his prior convictions. The court also granted defendant's motion in limine to prohibit the prosecution from introducing evidence of his alleged priors. However, the prosecution would be able to use the alleged priors for impeachment purposes if defendant testified.

2

*The Prosecution's Case*

On November 27, 2007, Samuel Barrera, a correctional officer at the Salinas Valley State Prison, conducted a security check. Barrera observed that defendant and his cellmate, Singleton, were present in their cell that night. The men were locked into their room at approximately 10:15 p.m. The next morning, Barrera discovered Singleton lying on the cell floor. Defendant was standing in the back of the cell and was escorted out by another correctional officer.

Singleton was not breathing and was unresponsive. Marquita Alton, a registered nurse, intervened and began administering medical care to Singleton. Alton assessed that Singleton did not have a pulse, but his body was still warm. Singleton was pronounced dead that morning at 6:02 a.m.

Correctional officer Manual Mendoza photographed defendant that morning. Primarily, Mendoza did not see many visible injuries on defendant. However, he did observe and photograph a "redness" or bruising on defendant's inner left bicep. Defendant also had a scratch on his left armpit area.

Correctional officer Christopher Wilson was present while Singleton was being photographed. Photographs showed an injury to the skin on the inside of Singleton's right kneecap and scuff marks on the top of his toes on his left foot.

Dr. John Hain, a forensic pathologist contracted by Monterey County, performed an autopsy on Singleton. Hain determined Singleton died from asphyxia due to strangulation, and the manner of death was homicide. Hain explained that it takes a minimum of three to four minutes to strangle someone to death. During that time, the victim would likely be conscious for a minimum of 10 seconds. Hain opined that the injuries to Singleton's knees could be consistent with him being on his knees at the time he was strangled. Hain believed Singleton's injuries were also consistent with being pushed against an arm or another object.

3

*The Defense Case*

Defendant testified on his own behalf. He had been in custody before at the Riverside County Jail, where he developed a fear for his own personal safety. Defendant said a correctional officer at the jail told him he would not need to worry about going to trial, because he would be dead before then. That same night, a group of inmates brutally beat the man that was supposed to be defendant's cellmate. Defendant said he and his potential cellmate were the only two African American men at the jail at the time. Later, one of defendant's cellmates hit him in the eye while he was incarcerated at the county jail. This caused defendant to suffer from light sensitivity, migraines, and blindness in that eye.

Defendant had been assaulted approximately six other times while in custody. He recounted several of the traumatic events during the trial. Defendant recalled an incident at the California Correctional Institute in Tehachapi where he was assaulted by his cellmate. He also recalled incidents that took place in another facility in Lancaster. Defendant believed some of these assaults were set up by the prison guards.

Defendant testified that his experiences in prison made him fear for his life. He had lasting injuries from the attacks.

Defendant first met Singleton when he was in custody in Tehachapi in 2005. At that time, Singleton had never threatened him specifically. However, Singleton had said he was going to start a race war, which would have involved defendant. Defendant knew of Singleton's prior history of violence.

Defendant said Singleton threatened him when they first became cellmates. Defendant convinced Singleton not to attack him. However, defendant believed it was only a matter of time before Singleton would become violent. At one point, defendant had written to his brother, expressing the belief that he was going to die.

The night Singleton was killed, he wanted to take one of defendant's last Top Ramen soups. Defendant had been giving Singleton food to appease him all week.

4

Defendant told him to put the soup back, and Singleton responded that he would do what he wanted to do. Singleton came at defendant and tried to hit him. Defendant said he was terrified, and so he just grabbed Singleton. Defendant said he felt that seconds, not minutes, passed. He grabbed Singleton by his shirt and protected himself, trying to stop Singleton from killing him. Defendant was not clear about what exactly transpired, just that he and Singleton were grabbing each other. He said he was choking Singleton with his own shirt, but he may have also been applying pressure to Singleton with his arm.

*The Verdict and Sentencing*

On March 8, 2012, the jury found defendant not guilty of first degree murder (§§ 187, subd. (a), 189) and of second degree murder (§§ 187, subd. (a), 189). However, the jury found defendant guilty of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)). The trial court found his prior conviction to be true.

The following week, defendant filed a *Romero*[2] motion requesting the court dismiss his prior convictions under section 1385, which the People opposed.

On May 15, 2012, defendant filed a motion for a new trial, arguing his trial counsel had rendered ineffective assistance. The court treated the new trial motion as both a new trial motion and a motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, because defendant had requested appointment of substitute counsel. After considering the documents submitted by defendant and the argument provided by defendant and his counsel, the trial court denied the motion for a new trial and the request for appointment of counsel.

That same day, the trial court sentenced defendant to an upper term of 11 years in prison, tripled pursuant to section 1170.12, subdivision (c)(2), for a total term of 33 years, to be served consecutive to his current sentence. Defendant was not given credits, because he was currently serving a prison sentence. The trial court ordered defendant to

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

5

pay a $4,800 restitution fund fine and a matching parole revocation fine. He was also ordered to pay $70 in court assessments. The court specified that restitution to the victim's family was to be determined.

## DISCUSSION

We first address the points raised in defendant's supplemental letter brief.

Preliminarily, defendant claims that his appellate counsel misled him and rendered ineffective assistance of counsel. Therefore, he requests appointment of substitute appellate counsel to assist him in the preparation of his opening brief. However, his claim of ineffective assistance of appellate counsel references matters and includes documents outside the record on appeal. Therefore, it is not properly raised here and should instead be raised in a petition for writ of habeas corpus. (*People v. Salcido* (2008) 44 Cal.4th 93, 172.)

Furthermore, defendant's appellate counsel filed a *Wende* brief, declaring that she reviewed the record and found no arguable appellate issues. Defendant claims, in essence, that appellate counsel failed to pursue the arguments he believes she should have pursued. This is not enough to warrant appointment of new appellate counsel.[3] "Although a defense attorney has a duty to advance all colorable claims and defenses, the canons or professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer--whether privately retained or publicly appointed--not to clot the courts with frivolous motions or appeals. [A defendant] has no legitimate complaint that his lawyer refused to do so." (*Polk County v. Dodson* (1981) 454 U.S. 312, 323, fn. omitted.)

---

[3] Defendant attaches, as an exhibit to his supplemental letter brief, a letter from his trial counsel declaring he sent defendant's entire case file to appellate counsel. However, based on this letter, we cannot determine if defendant's appellate counsel made false representations to defendant that she did not possess the file, or that she failed to conduct the research necessary in order to determine if there were any arguable issues on appeal.

6

Next, defendant argues his prior conviction must be stricken, because he was not properly informed of his constitutional rights. (*People v. Coffey* (1967) 67 Cal.2d 204, 215; *People v. Sumstine* (1984) 36 Cal.3d 909.) He also argues his prior conviction was made as a result of coercion and duress, and that the *Faretta*[4] waiver he gave in his prior case was not knowing and intelligent. Defendant raised these arguments below in his motion to strike his prior conviction. The court rejected his claims and denied the motion, a decision we must uphold if it is supported by substantial evidence. (*People v. Pride* (1992) 3 Cal.4th 195, 256.) Based on the record, it appears there was substantial evidence that defendant was properly informed of his constitutional rights during the proceedings involving his prior conviction. During the prior court hearings, the court advised defendant multiple times of his right to counsel and defendant repeatedly asserted he wished to proceed in propria persona. We must therefore uphold the trial court's decision denying the motion to strike.

Second, defendant argues his trial counsel rendered ineffective assistance. Like his claim that his appellate counsel rendered ineffective assistance, this argument relies on matters outside the appellate record. Therefore, it too should be raised in a petition for writ of habeas corpus, not on appeal. (*People v. Salcido*, *supra*, 44 Cal.4th at p. 172.)

Third, defendant's claim that his restitution fine should be reversed due to his indigent status is forfeited for his failure to object at the sentencing hearing when the fine was imposed. (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.)

Next, we find no merit in defendant's claim that his *Marsden* motions were improperly denied.[5] "The decision to substitute counsel is within the discretion of the trial court; this court will not find an abuse of discretion unless the trial court's failure to

---

[4] *Faretta v. California* (1975) 422 U.S. 806.

[5] In his letter brief, defendant does not specify which *Marsden* motion he believes was erroneously denied. Regardless, we have reviewed the transcripts of the *Marsden* hearings that took place on February 22, 2012 and on May 15, 2012.

7

substitute counsel would ' " 'substantially impair' the defendant's right to effective assistance of counsel." ' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803.)  We find the trial court made proper inquiries and did not abuse its discretion when it declined to substitute counsel.

Lastly, defendant claims the court erred in denying his motion for a new trial due to the ineffective assistance of his trial counsel.  Section 1181 sets forth nine grounds for granting a new trial motion.  Ineffective assistance of counsel is not one of them, but the California Supreme Court in *People v. Fosselman* (1983) 33 Cal.3d 572, 582 held that a claim of ineffective assistance can be asserted as a basis for a new trial.  A trial court's ruling on a motion for new trial is reviewed for abuse of discretion.  (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)  A trial court " 'should consider a claim of ineffective assistance of counsel in a motion for new trial . . .' when the ' "issue of counsel's effectiveness can be resolved promptly at the trial level" ' and justice will . . . thereby be expedited." (*People v. Carrasco* (2014) 59 Cal.4th 924, 981.)  However, if justice cannot readily be expedited at the trial court level, the court does not abuse its discretion in denying the new trial motion.  (*Ibid*.)

Based on the record, the court did not abuse its discretion when it denied the new trial motion.  Most of defendant's claims targeted defense counsel's choice of tactics, not his performance at trial, and were not the type of issue that could be promptly and effectively resolved by the trial court.

In addition to the arguments set forth by defendant in his letter brief, we have also conducted an independent review of the record pursuant to *Wende* and *Kelly*.  We conclude there are no arguable issues on appeal.

## DISPOSITION

The judgment is affirmed.

8

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.