Filed 8/2/16  P. v. Melton CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064173 |
| v. | (Super.Ct.No. RIF1301055) |
| ROBERT EARL MELTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Earl Melton appeals from a judgment of conviction of selling methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) He was sentenced to six years in prison as a "second striker." (Pen. Code, § 667, subds. (c) & (e)(1).)[1] On this appeal, he contends that his admission of a "strike prior" was improperly received because he was not advised of his constitutional rights prior to the admission. We disagree. He also contends that his credits were improperly calculated, and the People agree but point out an arithmetical error with which defendant, in turn agrees.

I

STATEMENT OF THE CASE

The underlying facts are not relevant to this appeal and may be very briefly summarized. Defendant sold methamphetamine to an undercover police officer participating in a "sting" operation. He was convicted after a jury trial.

The information alleged that he had suffered a prior serious or violent felony conviction, a 1979 conviction for rape in the state of Washington. (§ 667, subds. (c) & (e)(1).) Before the case was submitted to the jury, defendant waived his right to a jury trial as to the prior convictions, confirming "You [the judge] can make it." After the jury returned its verdict, defendant apparently told counsel that he was under a conservatorship and counsel declared a doubt as to his competency. (§ 1368.) Proceedings were suspended.

_____

[1] All subsequent statutory references are to the Penal Code.

2

The required reports on defendant's mental status came back 2-1 for competent and after the parties submitted on the reports, the trial court found defendant competent and proceedings resumed. At the sentencing hearing, defense counsel first informed the court that defendant did not wish to admit the prior. Defendant interjected, "No, that's not correct," and in response to counsel's surprise continued, "I admit my prior." After some discussion with counsel, defendant told the court "the prosecutor's got to show three express waivers of when I gave up my constitutional rights. [¶] . . . [¶] It's *Boykin* and *Tahl.* [¶] . . . [¶] . . . And then it's *People v. Sunstein* [*sic*], and it's 1994.[2] It's in the California code book of 1994. It's 35.33, page 880. [¶] . . . [¶] He's got to show that I gave three express waivers to waiving my rights."

The court then informed defendant that he would have to use the appropriate legal mechanism if he wished to attack his prior conviction. Defendant then asserted that he wanted new counsel, a request which was rejected by the court after the appropriate hearing under *People v. Marsden* (1970) 2 Cal.3d 118.

Back in open court, defendant's counsel expressly advised him that the court intended to determine whether he had suffered the prior conviction, and asked him whether he wished to admit that he was the person described in the documentation, or to "challenge and have the People prove to the judge that you're that person." Defendant's response was "It was me." However, defendant also insisted that "when I admitted to it, it was not a strike."

---

2 The correct citation is *People v. Sumstine* (1984) 36 Cal.3d 909.

3

When the court then explained that the "Three Strikes" law retroactively made the conviction a "strike," defendant commented that "There's a *Romero* act to strike a strike."[3]  After some discussion of the facts of the prior case in the context of a potential motion to strike—during which defendant only contested the facts, not his identity as the person who did whatever had happened, the court in essence asked him if he wished to admit that he had pleaded guilty to kidnapping and rape.  Defendant stated "I did not.  [¶] . . . [¶]  I pleaded guilty to one count."  The court then asked "any reason to conduct a court trial on this matter?  Any reason you can think of to conduct a court trial on this matter, or do you just wish to waive that court trial[4] and admit that you were convicted in 1979?"  Defendant answered "Yeah.  I admitted it."  The court then pronounced sentence.

## II

## DISCUSSION

There is no dispute that before a defendant admits the truth of a prior conviction allegation he or she must be advised of the right to a trial on the issue, the right to remain silent, and the right to confront adverse witnesses.  (*In re Yurko* (1974) 10 Cal.3d 857, 863.)[5]  The presence of express advisals and waivers on the record establishes that the

---

[3]  *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[4]  It will be remembered that defendant had already expressly waived his right to a *jury* trial on the issue.

[5]  These are commonly referred to as "*Boykin-Tahl*" advisements after *Boykin v. Alabama* (1969) 395 U.S. 238, 243 and *In re Tahl* (1969) 1 Cal.3d 122, 132.

4

defendant's admission is voluntary and intelligent.  (*People v. Howard* (1992) 1 Cal.4th 1132, 1178-1179.)  However, the absence of express advisals and waivers do not establish the contrary; rather, whether the defendant's admission was voluntary and intelligent is determined by the totality of the circumstances if, as here, at least partial advisals are given.  (*People v. Cross* (2015) 61 Cal.4th 164, 179; *People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*); cf. *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1421 [a "silent-record" case].)

In *Mosby*, the defendant was informed that he had the right to a jury trial on the prior conviction allegation.  (*Mosby*, *supra*, 33 Cal.4th at p. 364.)  The same is true here.  However, defendant—as was also the case in *Mosby*—was not expressly informed of his rights to remain silent and to confront witnesses.  But again like the defendant in *Mosby*, defendant here had recently gone through a trial at which he had not testified and at which counsel had examined witnesses and therefore knew of such rights.

It is true that due to the competency proceedings, several months elapsed from the rendition of the verdict on February 27, 2015, and the admission of the prior on July 17, 2015.  In *People v. Lloyd* (2015) 236 Cal.App.4th 49, 59-60 (*Lloyd*), the court declined to find that an admission made seven months after trial reflected knowledge of the specified constitutional rights where nothing else supported a conclusion that defendant was intimately familiar with them.  *Lloyd* is distinguishable.  First, we do not agree that the reference in *Mosby* to a defendant who has "just" been through trial reflects any specific time during which the advisals and experience may remain fresh.  (See *Mosby*, *supra*, 33

5

Cal.4th at pp. 364-365; *Lloyd*, *supra*, at p. 59.)  Rather, the lapse of time in our view is but one factor to be used in determining whether, at the time of the admission, defendant was aware of his rights.

Furthermore, in this case the record is more than sufficient to establish defendant's familiarity with his rights.  A defendant's prior experience with the criminal justice system—and specifically cases in which a plea was presumably preceded by *Boykin-Tahl* advice—may be considered in determining a defendant's legal sophistication.  (*Mosby*, *supra*, 33 Cal.4th at p. 365.)  Here, that sophistication is more directly expressed.  In the portions of the transcript which we have summarized and from which we have quoted above, defendant—specifically citing *Boykin*, *Tahl*, *Sumstine*, and *Romero*— demonstrated a familiarity with the law involving pleas and admissions, as well as "strikes," which would be impressive in a law student, let alone a criminal defendant.  He also expressly stated that "the prosecutor's got to show three express waivers of when I gave up my constitutional rights."  The conclusion is inevitable that defendant knew exactly what these "three" "constitutional rights" were.

As a fallback, defendant suggests that because competency proceedings had recently been conducted, the court should have taken extra care to ensure that he understood the rights he was giving up by his admission.  But once the court found him competent, there was no need for unusual concern.  (Although we recognize that the court in fact failed to take even the necessary steps to advise defendant.)

Defendant's other argument is that he is entitled to 249 days of actual custody credit and 124 conduct credits for a total of 373 days. The amended abstract credits him with only 239 actual days, although it awards 124 conduct credits which would be appropriate for 249 actual days. The People agreed with defendant's legal position but pointed out that both the court and defendant's arithmetical calculations were incorrect, arguing that the correct numbers were 229 actual and 114 conduct credits. Defendant agrees with this. We will so order.

III

DISPOSITION

The trial court is directed to issue an amended abstract of judgment reflecting 229 days of actual custody and 114 days of conduct credit and forward a copy of the amended abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


MILLER
J.


SLOUGH
J.

7