[No. F041273. Fifth Dist. July 15, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BARAJAS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I.A., I.C., and II.

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, David A. Rhodes and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**O**PINION

**WISEMAN, J.—** ■ Defendant David Barajas appeals from his conviction of second degree murder. In the published part of this opinion, we hold that the court did not err in failing to give CALJIC No. 8.72 (reasonable doubt between murder and manslaughter) sua sponte when it gave a proper instruction in accordance with CALJIC No. 17.10 (conviction of lesser offense instead of greater). In the unpublished part, we address two additional jury instruction issues, defendant's contention that the court erred in denying his motion for a new trial, and defendant's contention that the attorney who represented him on the new trial motion rendered ineffective assistance. We affirm.

## FACTUAL AND PROCEDURAL HISTORIES

Sometime before midnight on September 16, 2000, toward the end of a night of drinking and cocaine use, defendant and two friends arrived at a Modesto bar. The three became involved in a confrontation with a group of other patrons. Defendant drew a handgun from his pants and shot Sidronio Alvarado Perez, one of the other patrons, five times at close range, killing him. The district attorney filed an information charging defendant with murder (Pen. Code, § 187)[1] with a special allegation of handgun use (§ 12022.53, subd. (d)).

The defense was self-defense. Defendant testified that a few weeks before the shooting, he had been attacked in his back yard by four men he did not know. He brought the gun with him the night of the shooting because of this prior event. In the bathroom at the bar, the victim (who was not one of the men who attacked him earlier) threatened to kill defendant unless defendant had his friends buy cocaine from the victim. Defendant replied that he had a gun in the car. The victim repeated that he would kill defendant if his friends did not buy the victim's cocaine. The victim also said, "Bring your gun and I'll take it away from you and kill you with it." Defendant was frightened by this conversation. Afterward, he decided to leave the bar and walked toward the door. The victim and his brother, Damaso, moved to intercept him. Damaso was holding a pool cue. Defendant drew the gun, placed the magazine in it, and told Damaso to come no closer. Damaso stopped, but the victim told his brother, "Don't be afraid of him." The victim then proceeded toward defendant. Defendant chambered a bullet and told him to stop. The victim still kept coming, saying that handguns are for men. Defendant moved toward the door, but encountered another person holding a pool cue. He turned toward the victim and again told him to stop, but the

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

victim kept coming slowly toward him. Defendant fired a shot at the ceiling. The victim continued his approach, smiling, and defendant pointed the gun at him and again warned him to stop. The victim kept coming, and defendant finally fired at him.

Defendant recalled firing only one shot at the victim, after which Damaso struck at the gun with the pool cue and hit defendant in the face with the cue. Defendant stated that he had no memory of what happened next, but a forensic pathologist testified that the victim was shot five times. Defendant said that he shot the victim because he was afraid the victim and his brother would take the gun and kill him.

The prosecution's evidence painted a different picture. Daniel Sandoval-Arce (Sandoval), one of defendant's companions the night of the shooting, testified for the prosecution. He said that before the confrontation between defendant and the victim, another of defendant's companions, named Valentin, got into a conflict with two men. The two men said Valentin gave them a dirty look. Valentin and the two men then went out into the parking lot, and defendant and Sandoval followed. In the parking lot, they found Valentin arguing with the men. The men made threatening movements toward Valentin. Defendant became angry, retrieved the gun from the car he and his companions had arrived in, and brandished it. The two men then left, and defendant put the gun in his waistband and went inside.

Inside the bar, Valentin became embroiled in an argument with the victim and Damaso. He went over to defendant's table and told defendant about the argument. Defendant again became angry and pulled the gun out, then put it back in his waistband. Valentin went back to the bar and resumed his argument with the victim and Damaso. As Sandoval stood nearby observing, defendant rose from the table and approached. The victim held no weapons. Sandoval testified that he and defendant then moved away around one side of a pool table as the victim and Damaso moved around the other side. He testified that he and defendant were trying to leave, but a police detective testified that Sandoval previously said he and defendant were trying to block the victim's path.

Damaso testified that he was not present when the shooting happened and that he was in the bathroom when he heard the shots. Another of the victim's companions, Raul Lavoy-Cruz, testified that, after emptying the gun into the victim, defendant pointed it at another man and twice pulled the trigger.

The pathologist described the victim's wounds. There were three entrance wounds on the front of the victim's body. There was one entrance wound on his back, corresponding to an exit wound on his chest. There was also a

wound on one of his fingers. Except for the shot that struck the finger, each shot could have caused the victim's death independently.

After the shooting, the victim's companions seized and beat defendant, using a bottle and the butt of defendant's gun. Defendant was hospitalized for about a week.

The jury found defendant guilty of second degree murder and found the handgun use allegation true. Defendant discharged his trial counsel and retained new counsel. He filed a motion for a new trial, arguing that his trial counsel provided ineffective assistance. The court denied the motion. Defendant was sentenced to an aggregate term of 40 years to life, consisting of 15 years to life for second degree murder and a consecutive term of 25 years to life for the handgun use enhancement.

## DISCUSSION

### I. *Jury instructions*

■ Defendant argues that the court erred in failing or refusing to give three jury instructions. In a criminal trial, the court must give an instruction requested by a party if the instruction correctly states the law and relates to a material question upon which there is evidence substantial enough to merit consideration. (*People v. Avena* (1996) 13 Cal.4th 394, 424 [53 Cal.Rptr.2d 301, 916 P.2d 1000]; *People v. Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311], overruled on other grounds by *People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) The court must also give some instructions sua sponte:

" '[E]ven in the absence of a request, a trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence, but need not instruct on specific points developed at trial. "The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law *commonly* or closely and openly connected with the facts of the case before the court." [Citations.]' " (*People v. Michaels* (2002) 28 Cal.4th 486, 529–530 [122 Cal.Rptr.2d 285, 49 P.3d 1032].)

■ The court has no duty to give an instruction if it is repetitious of another instruction also given. (*People v. Turner* (1994) 8 Cal.4th 137, 203 [32 Cal.Rptr.2d 762, 878 P.2d 521].) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 [74 Cal.Rptr.2d 212, 954 P.2d 475].)

A. *Antecedent threats**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.  *CALJIC No. 8.72*

Defendant argues that the court should have given the following instruction, CALJIC No. 8.72, sua sponte:

"If you are convinced beyond a reasonable doubt and unanimously agree that the killing was unlawful, but you unanimously agree that you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder."

The People argue that the subject matter was adequately covered by other instructions given by the court. The court instructed with CALJIC Nos. 8.10, 8.11, 8.30 and 8.31, providing definitions relevant to murder. It gave CALJIC Nos. 8.37, 8.40, and 8.45, providing definitions pertinent to voluntary and involuntary manslaughter. It also gave CALJIC No. 17.10:

"If you are not—if you, the jury, are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may, nevertheless, convict on a lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime.

"The crime of voluntary manslaughter, Penal Code Section 192, Subdivision A, a felony, is lesser to that of second degree murder, Penal Code Section 187, as charged in the information.

"The crime of involuntary manslaughter, Penal Code Section 192, Subdivision B, a felony, is lesser to that of second degree murder, Penal Code Section 187, as charged in the information.

"Thus, you, the jury, are to determine whether the defendant is guilty or not guilty of the crime charged, that is, second degree murder, or of any lesser crimes—any lesser crime. In doing so, you have the discretion to choose the order in which you will evaluate each crime and consider the evidence pertaining to it. You may find it productive to consider and reach a tentative conclusion on the charge and lesser crimes before reaching any final verdict. However, the Court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the charged crime."

---

*See footnote, *ante,* page 787.

Defendant relies on *People v. Dewberry* (1959) 51 Cal.2d 548 [334 P.2d 852] and *People v. Aikin* (1971) 19 Cal.App.3d 685 [97 Cal.Rptr. 251], disapproved on other grounds in *People v. Lines* (1975) 13 Cal.3d 500, 514 [119 Cal.Rptr. 225, 531 P.2d 793]. In *Dewberry*, the defendant was convicted of second degree murder. (*Dewberry, supra,* at p. 550.) The court instructed on the elements of murder and manslaughter. It also instructed that if the jury was convinced beyond a reasonable doubt that the defendant committed murder but had a reasonable doubt as to the degree, it may convict only of second degree murder. (*Id.* at p. 554.) The court refused to give the following instruction:

" 'You may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, if, in your judgment, the evidence supports such a verdict under my instructions.

" 'To enable you to apply the foregoing instruction, if your findings of fact require you to do so, I instruct you that the offense of murder, of which the defendant is charged in Count I of the indictment, necessarily includes the crime of manslaughter.

" 'If you find that defendant was guilty of an offense included within the charge of the indictment, but entertain a reasonable doubt as to the degree of the crime of which he is guilty, it is your duty to convict him only of the lesser offense.' " (*People v. Dewberry, supra,* 51 Cal.2d at p. 554.)

Our Supreme Court held that the refusal to give this instruction was error because the instructions as given had "the clearly erroneous implication that the rule requiring a finding of guilt of the lesser offense applied only as between first and second degree murder" and not also as between murder and manslaughter. (*People v. Dewberry, supra,* 51 Cal.2d at p. 557.) In *Aikin*, the court held that an instruction like the one at issue in *Dewberry* must be given sua sponte. (*People v. Aikin, supra,* 19 Cal.App.3d at p. 704.)

■ The People argue that CALJIC No. 17.10 satisfies the requirements of *Dewberry*. We agree. CALJIC No. 17.10, when its blanks are filled in for murder and manslaughter, is logically equivalent to CALJIC No. 8.72. If a jury is convinced beyond a reasonable doubt that a defendant is guilty of either a greater or a lesser offense, this can only be because it has a reasonable doubt about elements of the greater offense and no reasonable doubt about any elements of the lesser. Under these circumstances, CALJIC No. 17.10 instructs the jury to convict of the lesser offense. CALJIC No. 8.72 does the same. As we recently stated, " 'the court is required to instruct sua sponte only on general principles which are necessary for the jury's understanding of the case. It need not instruct on specific points . . . which might

be applicable to a particular case, absent a request for such an instruction.' " (*People v. Garvin* (2003) 110 Cal.App.4th 484, 488–489 [1 Cal.Rptr.3d 774].)

*People v. St. Germain* (1982) 138 Cal.App.3d 507 [187 Cal.Rptr. 915] is consistent with our conclusion. There the defendant was convicted of robbery and grand theft. (*Id.* at p. 511.) The court instructed the jury with CALJIC No. 17.10, indicating that petty theft was a lesser-included offense of both grand theft and robbery, and that if the jury found the defendant not guilty of the charged offense, it could find him guilty of a lesser offense. (*St. Germain, supra,* at p. 520.) The court refused an additional instruction stating that if the evidence supported both a charged and a lesser offense, but the jury had a reasonable doubt as to which was committed, it could convict only of the lesser offense. (*Id.* at p. 521.) The court held that CALJIC No. 17.10 covered the situation. The court reasoned that the requested instruction "and CALJIC No. 17.10 both tell the jury that if they find that the prosecution has not proven the elements of robbery (the greater offense) beyond a reasonable doubt then the defendant may be found guilty of the lesser offense (petty theft) if that offense has been proven beyond a reasonable doubt." (*People v. St. Germain, supra,* 138 Cal.App.3d at p. 522.) CALJIC No. 17.10 "adhered precisely to *Dewberry.*" (*St. Germain, supra,* at p. 521.)

Another division of the same appellate district had earlier reached a contrary conclusion. In *People v. Reeves* (1981) 123 Cal.App.3d 65 [176 Cal.Rptr. 182], disapproved on other grounds in *People v. Sumstine* (1984) 36 Cal.3d 909, 919, footnote 6 [206 Cal.Rptr. 707, 687 P.2d 904], the defendant was convicted of burglary. (*Reeves, supra,* at p. 67.) The court gave CALJIC No. 17.10, informing the jury of its ability to convict of the lesser offense of "trespass to land to interfere with business." (*Reeves, supra,* at pp. 69–70.) The defendant argued that the court also should have, sua sponte, instructed the jury that if it had a reasonable doubt between the greater and lesser offenses, it could convict only of the lesser. (*Ibid.*) The appellate court agreed, although it held the error was harmless. (*Id.* at p. 70.)

We agree with the *St. Germain* court's reasoning. Since the court gave CALJIC No. 17.10, it did not err in failing to give CALJIC No. 8.72 sua sponte. We reserve for another day the question whether *St. Germain* is correct in holding that the second instruction need not be given even if requested.

I.C., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## *DISPOSITION*

The judgment is affirmed.

Vartabedian, Acting P. J., and Cornell, J., concurred.

A petition for a rehearing was denied August 13, 2004, and appellant's petition for review by the Supreme Court was denied October 13, 2004.

---

*See footnote, *ante*, page 787.