Filed 4/30/13  P. v. Epps CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055534 |
| v. | (Super.Ct.No. RIF1100036) |
| CHARLES NATHAN EPPS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Jeffrey Prevost, Judge. Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant, Charles Epps, of assault with intent to commit rape (Pen. Code, § 220)[1] and battery by a prisoner on a non-prisoner (§ 4501.5). In bifurcated proceedings, he admitted having suffered three strike priors (§ 667, subds. (c) & (e)(2)(A))[2] and four prior convictions for which he served prison sentences (§ 667.5, subd. (b)). He was sentenced to prison for 25 years to life. He appeals, claiming that his motion to suppress his statement should have been granted and that the jury was misinstructed. We reject his contentions and affirm.

## FACTS

On August 26, 2010, after class had ended, defendant, who was confined in the California Rehabilitation Center (CRC), entered the classroom of a teacher there and told her that he wanted to be in her class. The teacher asked defendant to leave, but he did not and he moved toward her while placing his hands down his pants. The teacher began to scream. Defendant pushed her into a dark office against a wall. She fell to the ground and defendant got on top of her. She kicked, screamed, scratched and stabbed at defendant with her keys. Defendant licked her hands and arms, began pulling on her shirt and pants and tried to touch her chest and crotch. After they struggled for a while, defendant got up and left. The teacher followed him outside, yelling. She told another teacher and a custody officer to stop defendant from getting away. The officer directed

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The sentencing court dismissed one of these in furtherance of justice.

defendant to stop and get down, but defendant did not comply.  He chased defendant, who was then forcibly captured and subdued.

## ISSUES AND DISCUSSION

1. *Admission of Defendant's Statement*

At the hearing on the motion concerning the admissibility of defendant's statement, an investigator who investigates criminal activity at CRC testified that after the crimes were committed, he was assigned to help process the crime scene, collect defendant's clothing, photograph defendant, and witness a sergeant read defendant his *Miranda*[3] rights before the sergeant began interviewing defendant.  The investigator, in the company of the sergeant, removed defendant from the holding cell in the Receiving and Release portion[4] of CRC and told defendant he was going to take pictures of defendant.  The investigator saw that defendant had cuts to his knee, elbow and forearm, as well as other red marks.[5]  Because he was unaware that defendant had been tackled during his apprehension, and all the investigator knew was that defendant had been indoors, wearing long pants, during the crimes and these injuries were inconsistent with that, the investigator asked defendant, "'What happened to your knee.'"  Defendant pointed to his knee and elbow and responded, "It happened when I fell."  Defendant then pointed to a scratch on his forearm and said, "This is where she scratched me."  The

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

[4] Defendant was due to be transported to the men's prison at Chino.

[5] At the time, defendant was in his t-shirt and boxer shorts, as his outer clothing had been removed and given to the investigator.

investigator continued taking pictures of defendant and the sergeant *Mirandized* defendant.

The trial court found that the investigator's testimony was credible, and his main purpose had been to conduct a photographic survey of defendant. The court concluded, beyond a reasonable doubt, that the investigator's question about what had happened to defendant's knee was a neutral inquiry, the investigator was surprised to discover that defendant's knee had been injured, and he asked the question in order to determine if he should pay more attention to that particular injury. The court further concluded, also beyond a reasonable doubt, that defendant's statement that "she" had scratched his arm was volunteered and had not been made in response to any question by the investigator. The court determined that defendant's statement was admissible, despite the absence of *Miranda* warnings.

We accept the trial court's resolution of disputed facts and its evaluation of credibility, if supported by substantial evidence, and we independently decide whether the statement was obtained in violation of *Miranda*. (*People v. Davis* (2009) 46 Cal.4th 539, 586) We give great weight to the considered conclusions of the trial court. (*People v. Wash* (1993) 6 Cal.4th 215, 235, 236.)

Defendant asserts that he "undoubtedly believed he was under an institutional obligation to cooperate with custodial officers lest he face even more grave consequences" than those flowing from his commission of the instant crimes. However, defendant was free to testify at this hearing and he could have testified precisely to this. However, he did not. Therefore, his current assertion is pure speculation. Moreover, the

4

fact that he invoked his right to make no statement before this, when being examined by a nurse and after this, when being given his *Miranda* rights, suggests the contrary. As the trial court expressly found, the latter "show[s] that [defendant] is cognizant of his ability not to give any statements involuntarily."

In arguing that the investigator's question was not neutral, defendant asserts that it was, "What happened?" which is different than, "What happened to your knee?"

Finally, defendant asserts that because a sexual battery was involved, the investigator should have known that the injuries on defendant's knees were consistent with such a crime and he should not have asked defendant about them. However, the investigator testified only that he had been called to investigate "a battery"—that it was a possible sexual battery on a teacher and it had occurred in a classroom, while defendant was wearing long pants. As stated before, the investigator testified that he was surprised when he saw the injuries to defendant's knees and the trial court believed his testimony. We have no basis to find otherwise. The People correctly point out that from his point of view, defendant knew his knee injuries had not been the result of what he had done to the victim, therefore, in his mind, the investigator asking him about them could not be construed as an inquiry into the circumstances of the crimes.

As to the trial court's finding that, regardless of the propriety of the investigator's question to defendant about his knees, defendant's statement about his arm was volunteered, defendant asserts only that the court "parsed" the two statements, somehow, artificially, and there was, in fact, no gap between the two, making the later statement, in essence, as much a response to the investigator's question as the first. We reject this

5

analysis.  It is clear to us, as it was to the trial court, that defendant volunteered the information about his arm and it was not in response to the officer's question about his knee.**6**

2. *Jury Instruction*

The jury was instructed that simple assault is a lesser included offense of the charged assault with intent to commit rape and a lesser included offense of the charged battery by a prisoner.  The jury was also instructed that simple battery is a lesser included offense of the charged battery by a prisoner.  The jury was also instructed, according to Judicial Council of California Criminal Jury Instructions, CALCRIM No. 3517, that "If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime.  [¶]  A defendant may not be convicted of both a greater and lesser crime for the same conduct.  [¶] . . . [¶]  For . . . each count in which a greater and lesser crime is charged, you will receive verdict forms of guilty and not guilty

---

**6** The People also point out that, despite the assumption of the parties below and of the trial court, that defendant was in custody for purposes of *Miranda*, Division One of this court, and other appellate courts, have rejected the notion that defendants interviewed by law enforcement officers at a custodial facility where they are already detained are "per se" in custody for purposes of *Miranda.* (*People v. Macklem* (2007) 149 Cal.App.4th 674, 687, 691, 692.)  Division One noted that in such cases, appellate courts look at ""''the language used to summon [the defendant], the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his [or her] guilt and pressure exerted to detain him [or her].''' [Citation.]" (*Id.* at p. 692.)  Because of the faulty assumption made below, facts concerning the above-stated criteria were not adduced at the hearing (a point, the People, themselves, essential concede) and, therefore, we are in no position to make a determination that defendant was not in custody for purposes of *Miranda*.

for the greater crime, and also verdict forms of guilty and not guilty for the lesser crimes. [¶] . . . [¶] If all of you agree that the People have proved beyond a reasonable doubt that the defendant is guilty of the greater crime, complete and sign the verdict form for guilty of that crime. Do not complete or sign any other verdict form for that count. [¶] If all of you cannot agree whether the People have proved beyond a reasonable doubt that defendant is guilty of the greater crime, inform me only that you cannot reach an agreement, and do not complete or sign any verdict form for that count. [¶] If all of you agree that the People have not proved beyond a reasonable doubt that the defendant is guilty of the greater crime, and you also all agree that the People have proved beyond a reasonable doubt that he is guilty of a lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for the lesser crime. [¶] If all of you agree that the People have not proved beyond a reasonable doubt that the defendant is guilty of the greater or a lesser crime, complete and sign the verdict forms for not guilty of the greater crime and the verdict form for not guilty of the lesser crime. [¶] Finally, if all of you agree that the People have not proved beyond a reasonable doubt that the defendant is guilty of the greater crime, but all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime and inform me only that you cannot reach an agreement about the lesser crime."

The jury was also instructed according to CALCRIM No. 220, "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. A defendant in a criminal case is presumed to

7

be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.  [¶]  . . . [¶]  In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all of the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him guilty.”

*People v. Dewberry* (1959) 51 Cal.2d 548, 555, held that where the evidence is sufficient to support a finding of guilt of a charged offense and a lesser included offense, if the jury has a reasonable doubt which crime the defendant committed, it must give the defendant the benefit of the doubt and find him guilty of the lesser included crime.  Section 1097 provides, in pertinent part, “When it appears that the defendant has committed a[n] . . . offense, . . . and there is reasonable ground of doubt in which of two or more degrees of the crime . . . he is guilty, he can be convicted of the lowest of such degrees only.”  The *Dewberry* court said of section 1097, “[The s]ection . . . presupposes that the jury has concluded that the defendant is guilty of some . . . offense embraced within the pleadings but is in doubt as to the degree of the offense proved.  . . .  [T]he words ‘offense’ and ‘degrees’ [in section 1097] . . . refer to all the degrees of criminality . . . involved in a criminal act. . . .  [¶]  . . .  [W]hether reasonable doubt exists as between degrees of the same offenses or as between the inclusive and included offense, the jury can only convict of the crime whose elements have been proved beyond a reasonable doubt.”  (*Id*. at pp. 555-556.)  Defendant contends that the failure to give an

instruction based on section 1097 and *Dewberry*[7] requires reversal of his convictions. We disagree.

Both section 1097 and the *Dewberry* principle are based on the principle that the prosecution must prove a defendant guilty beyond a reasonable doubt. (*Dewberry*, *supra*, 51 Cal.2d at p. 556.) As explained in *Dewberry*: "In every case the principle of reasonable doubt requires an acquittal of an offense when the prosecution has not met its burden of proof. Thus, whether reasonable doubt exists as between degrees of the same offense [as section 1097, narrowly construed, speaks to] or as between the inclusive and included offense, the jury can only convict of the crime whose elements have been proved beyond a reasonable doubt." (*Ibid*.)

CALCRIM No. 3517, together with CALCRIM No. 220, instructed the jury on the principle of reasonable doubt and the *Dewberry* principle, which specifically applies the principle of reasonable doubt when the jury has a reasonable doubt whether the elements of a greater offense or a lesser included offense have been proved beyond a reasonable doubt.

CALCRIM No. 3517 reflects and incorporates the principle of reasonable doubt as set forth in CALCRIM No. 220, and its specific application in the *Dewberry* principle, because it tells the jury that it cannot find a defendant guilty of a greater crime unless all the jurors agree the defendant is guilty of the greater crime beyond a reasonable doubt.

---

[7] In his opening brief, defendant relies solely on section 1097. However, in his reply brief, he also relies on *Dewberry*, which, in our opinion, is based on the principal enunciated in section 1097.

Thus here, CALCRIM Nos. 220 and 3517 did not permit the jury to find defendant guilty of any of the greater offenses charged in counts 1 and 2, and required it to acquit defendant of the greater offense, in the event the jurors did not agree or at least some of them had a reasonable doubt whether the defendant was guilty of the greater offense.

In *People v. Crone* (1997) 54 Cal.App.4th 71, 76, this court noted that the giving of the previous version of CALCRIM No. 3517, i.e., CALJIC No. 17.10, satisfied the requirements of *Dewberry*.[8]  In *People v. Barajas* (2004) 120 Cal.App.4th 787, 793, the appellate court held that the giving of the reasonable doubt instruction, along with CALJIC No. 17.10, was sufficient for the purpose of *Dewberry*.  (Accord, *People v. Gonzales* (1983) 141 Cal.App.3d 786, 794, fn. 8; *People v. St. Germain* (1982) 138 Cal.App.3d 507, 521, 522.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

HOLLENHORST_____
J.

RICHLI_____
J.

---

[8]  Defendant cites *Crone* for its statement of the standard for assessing the failure to give a required instruction, while ignoring this portion of our opinion.