Filed 9/3/14  P. v. Kruzik CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA ALAN KRUZIK,<br><br>    Defendant and Appellant. | D065945<br><br><br><br>(Super. Ct. No. FMB1000476) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Rodney A. Cortez, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Dane R. Gillette and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Michael B. McPartland, under appointment by the Court of Appeal, for the Defendant and Appellant.

A jury convicted Joshua Alan Kruzik of one count of second degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and one count of assault on a child with force likely to produce great bodily injury resulting in death (§ 273ab; count 2). The court sentenced Kruzik to 25 years to life on count 2, and stayed under section 654 the 15 year-to-life term on count 1. Kruzik contends the court prejudicially erred by failing to instruct the jury that if it was convinced he was guilty of homicide, but had a reasonable doubt about whether the crime was murder or manslaughter, it had to give him the benefit of the doubt and return a verdict finding him guilty of manslaughter rather than murder. We conclude the court adequately instructed the jury on application of the reasonable doubt standard in determining whether Kruzik committed murder or manslaughter. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On November 19, 2010, Timothy Allen and Melissa Marnell asked Kruzik to babysit their 19-month-old daughter, A.A., while they went to a tattoo parlor. Kruzik planned to stay at Allen and Marnell's home for two nights before leaving town.

At approximately 10:00 that evening, Kruzik went to Allen and Marnell's house to babysit A.A., who was already asleep in her crib. Allen knew Kruzik had had at least one or two drinks but did not believe him to be drunk or very intoxicated and felt comfortable

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

leaving him with A.A. He told Kruzik to call him and Marnell if any issues arose, and left.

Allen and Marnell returned home the next morning at about 12:30 a.m. and woke Kruzik up from their bed, telling him to go sleep on the couch. At about 9:00 a.m., Allen checked on A.A. and saw that she appeared to be sleeping. He checked on A.A. an hour later, this time approaching her crib. A.A. did not appear to be breathing, was very cold, and her face was visibly blue and bruised. Allen yelled for Kruzik to call 911 and, with the instructions of the 911 operator, Kruzik performed CPR on A.A.

Shortly after the 911 call, paramedics arrived and took over A.A.'s medical care. They noted she had no pulse, was not breathing, and was "gray ash" in color as she was being transported to a hospital. A.A. died on November 21, 2010.

An autopsy of A.A.'s body revealed evidence of three impacts to the head: one on the top of her head, one to the side of her head, and one to her right forehead. The forensic pathologist opined that A.A.'s death was a homicide caused by blunt force trauma to the head. A.A. exhibited signs of brain swelling, subdural hemorrhaging, and retinal hemorrhaging. She also had an abdomen injury that the forensic pathologist believed was likely caused by a blow.

At trial, the People introduced audio recordings of several interviews of Kruzik, including one conducted on December 1, 2010, by a sergeant from the San Bernardino County's Sheriff's Department in the presence of a Naval special agent. During this interview, Kruzik explained that his friend gave him a ride to Allen and Marnell's house at approximately 10:30 p.m. on the night of the incident. Kruzik then spoke briefly with

3

Allen before he left. Later that evening, A.A. started crying, which led Kruzik to wake up. While trying to calm her down, Kruzik was holding A.A. and "stumble[d] over . . . a big pile of toys . . . [and] fell right on her." He said she stopped crying instantly. He claimed A.A.'s eyes became "puffy" and that "she had blood in her lip and in her nose." He noted that she was still breathing. He tried to wake A.A. by shaking her, smacking the side of her head, putting his hand over her mouth and nose, choking off her airway to get her to gag, and trying to force her to throw up. When all of his attempts failed, he laid her back in her crib and fell asleep in Allen and Marnell's bed.

Kruzik told the sergeant that he consumed alcohol at a bar before arriving at Allen and Marnell's house. In total, he drank eight 16-ounce beers, some Goldschläger, and a shot of bourbon. After the sergeant expressed his doubts regarding Kruzik's story that he fell onto A.A., Kruzik admitted he was getting mad when she would not take toys or drink water, and he struck A.A. on her head four or five times. He explained that she fell to the ground after each blow and he propped her back up.

*Defense Evidence*

Kruzik testified in his defense mostly consistently with his interview. He testified that on the night of November 19, 2010, when he left the bar, he felt intoxicated because his "balance was off" and "vision was shaky at best." At approximately 10:30 p.m., when he got to Allen and Marnell's house to babysit A.A., he still felt "pretty intoxicated." He testified that he had injected anabolic steroids from July 2010 through most of October 2010. He stopped injecting the steroids about three or four weeks before A.A.'s death but

4

continued to take oral steroids and other illegal substances. He claimed the steroids caused him to have a short temper.

In his defense to the second degree murder charge, Kruzik claimed that he had not actually formed either express malice or implied malice because he was intoxicated and/or had mental impairments. He presented defense expert Veronica Thomas, a forensic psychologist, who evaluated Kruzik and diagnosed him with alcoholic dependence disorder, body dysmorphic disorder, and borderline personality disorder. Dr. Thomas explained that alcohol dependence refers to someone who has a physiological dependence on alcohol in order to mediate and smooth out their moods. Body dysmorphic disorder refers to someone who has a distorted and sometimes irrational perception about himself. A person with borderline personality disorder has emotional instability and may have low self-esteem, depression, and anxiety, along with problematic interpersonal relationships.

Dr. Thomas stated that alcohol impairs judgment and volitional behavior. She explained that a certain level of intoxication can affect one's ability to form intent and mental capacity in general. It would affect sorting out data and making appropriate assessments on how to use that data. Dr. Thomas noted that steroids can also impact one's mood, behavior, and judgment.

*Jury Instructions*

The trial court instructed the jury with CALCRIM No. 220,[2] which articulated the presumption of innocence and its requirement that the People prove a defendant guilty beyond a reasonable doubt. The court also instructed the jury with CALCRIM No. 520,[3] which explained that second degree murder is the unlawful commission of an act that caused the death of another person committed with malice aforethought, and that malice aforethought was express or implied.

The court also instructed the jury with CALCRIM No. 580[4] as to involuntary and voluntary manslaughter. It gave the jury direction about the relationship between second

---

[2] The court read CALCRIM No. 220 in part as follows: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

[3] The court read CALCRIM No. 520 in part as follows: "To prove that the defendant is guilty of [murder], the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; and 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] . . . [¶] If you find the defendant guilty of murder, it is murder of the second degree."

[4] The court read CALCRIM No. 580 as follows: "When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the crime is involuntary manslaughter. [¶] The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life that his or her actions created and consciously disregarded

degree murder, voluntary manslaughter, and involuntary manslaughter, and how the jury should consider these three types of homicides with CALCRIM No. 642 as follows:

"You will be given verdict forms for guilty and not guilty of second degree murder, voluntary manslaughter, and involuntary manslaughter. [¶] You may consider these different kinds of homicide in whatever order you wish, but I can accept a verdict of guilty or not guilty of voluntary manslaughter or involuntary manslaughter only if all of you have found the defendant not guilty of second degree murder. [¶] As with all the charges in this case, to return a verdict of guilty or not guilty on a count, you must all agree on that decision. [¶] Follow these directions before you give me any completed and signed final verdict forms. Return the unused verdict forms to me, unsigned. [¶] . . . If all of you agree that the People have proved beyond a reasonable doubt that the defendant is guilty of second degree murder, complete and sign that verdict form. Do not complete or sign any other verdict forms for the homicide, count 1. [¶] If all of you cannot agree whether the defendant is guilty of second degree murder, inform me that you cannot reach an agreement and do not complete or sign any verdict forms. [¶] . . . If

that risk. An unlawful killing caused by a willful act done with full knowledge and awareness that the person is endangering the life of another, and done in conscious disregard of that risk, is voluntary manslaughter or murder. An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter. [¶] The defendant committed involuntary manslaughter if: [¶] 1. The defendant committed a crime; [¶] 2. The defendant committed the crime with criminal negligence; and [¶] 3. The defendant's acts unlawfully caused the death of another person. [¶] . . . [¶] In order to prove murder or voluntary manslaughter, the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for human life. If the People have not met either of these burdens, you must find the defendant not guilty of murder and not guilty of voluntary manslaughter."

7

all of you agree that the defendant is not guilty of second degree murder, complete and sign the form for not guilty of second degree murder. [¶] If all of you agree on a verdict of guilty or not guilty of voluntary manslaughter or involuntary manslaughter, complete and sign the appropriate verdict form for each charge on which you agree. Do not complete or sign any other verdict forms. You may not find the defendant guilty of both voluntary and involuntary manslaughter. [¶] If you cannot reach agreement as to voluntary manslaughter or involuntary manslaughter, inform me of your disagreement. Do not complete or sign any verdict form for any charge on which you cannot reach agreement."

During deliberations, the jury asked the trial court whether the implied malice theory only applied to the period during which the beating occurred, or whether it extended through the night and into the next morning. In response, the court referred the jury to CALCRIM No. 252.[5]

## DISCUSSION

Kruzik contends the trial court erred when it failed to instruct the jury sua sponte with instructions such as CALJIC Nos. 8.72 or 17.10, which would have told the jurors that if they were convinced that A.A.'s killing was unlawful, but had a reasonable doubt about whether the crime was murder or manslaughter, they had to give Kruzik the benefit

---

[5] CALCRIM No. 252 reads in part: "The following crime requires a specific intent or mental state: Murder, as charged in count 1. For you to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent and mental state. The act and the specific intent and mental state required are explained in the instruction for that crime."

8

of the doubt and return a verdict finding him guilty of manslaughter rather than murder. Pointing to the evidence of his mental impairments, as well as the effect his alcohol and steroid use had on his temper, Kruzik maintains there was sufficient evidence to support a finding that he had not actually formed malice aforethought, and was only guilty of the lesser offense of involuntary manslaughter, thus warranting such an instruction. He also argues that the jury's question shows this was a "close case" as to whether he should be found guilty of murder or involuntary manslaughter, and that his conviction must be reversed because it is reasonably probable that a more favorable result would have been reached but for the trial court's instructional error.

The People counter on two grounds: (1) Kruzik forfeited his contentions, and (2) the trial court's instructions were proper because CALCRIM No. 580, like CALJIC No. 8.72, instructs the jury as to the People's burden of proof beyond a reasonable doubt.

## I. *Forfeiture*

We reject the People's cursory forfeiture argument. They concede that absent an objection, a defendant may challenge on appeal an instruction that affects his or her "substantial rights." (§ 1259.) However, the People rely on the principle that "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218, overruled on other grounds in *People v. Trevino* (2001) 26 Cal.4th 237, 243-244.) They point out Kruzik did not object to the court's instruction with CALCRIM No. 580 or

9

argue it was incorrect in law, and he did not request the court to give CALJIC No. 8.72 or any other "clarifying" instructional language.

We disagree with the People's framing of Kruzik's claims. Kruzik's appeal is premised on error under *People v. Dewberry* (1959) 51 Cal.2d 548 (*Dewberry*), that is, that the court's instructions failed to tell the jury that if it entertained a reasonable doubt whether a greater or lesser offense was committed, it had to convict him of the lesser offense. (*Id*. at p. 555.) If Kruzik were correct in this contention (though we conclude below he is not), *Dewberry* error would affect his substantial rights. Under these circumstances, an objection is not required. (See, e.g., *People v. Cleveland* (2004) 32 Cal.4th 704, 749.) Therefore, even absent an objection, Kruzik has not waived the right to appeal the alleged instructional error.

## II. *Claim of Instructional Error*

### A. *Applicable Law*

In a criminal trial, the court must give instructions to the jury sua sponte on the general principles of the law relevant to the issues raised by the evidence, that is, " ' "those principles of law commonly or closely and openly connected with the facts of the case before the court." ' " (*People v. Michaels* (2002) 28 Cal.4th 486, 529-530, italics omitted; see also *People v. Whalen* (2013) 56 Cal.4th 1, 68; *People v. Barajas* (2004) 120 Cal.App.4th 787, 791.) But the court has no duty to give repetitious instructions (*People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1138) and the correctness of the jury instructions given " ' "is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v.*

10

*Musselwhite* (1998) 17 Cal.4th 1216, 1248; *People v. Solomon* (2010) 49 Cal.4th 792, 822; see *Barajas*, at p. 791.)  When a defendant challenges instructions as being subject to the jury's erroneous interpretation, he must demonstrate a reasonable likelihood that the jury understood the instructions in the way asserted by the defendant.  (*People v. Solomon*, at p. 822.)

Section 1097 provides in part:  "When it appears that the defendant has committed a[n] . . . offense, . . . and there is reasonable ground of doubt in which of two or more degrees of the crime . . . he is guilty, he can be convicted of the lowest of such degrees only."  In *Dewberry*, the court addressed this section, stating it "presupposes that the jury has concluded that the defendant is guilty of some . . . offense embraced within the pleadings but is in doubt as to the degree of the offense proved.  . . .  [T]he words 'offense' and 'degrees' [in section 1097] . . . refer to all the degrees of criminality . . . involved in a criminal act.  . . .  [¶]  . . . [W]hether reasonable doubt exists as between degrees of the same offense or as between the inclusive and included offense, the jury can only convict of the crime whose elements have been proved beyond a reasonable doubt."  (*Dewberry*, *supra*, 51 Cal.2d at pp. 555-556.)

In *Dewberry*, a murder case, the trial court instructed the jury that there were two degrees of murder and that if the jurors were convinced beyond a reasonable doubt the defendant had committed the crime of murder but entertained a reasonable doubt as to the degree, they should give him the benefit of the doubt and find him guilty of second degree murder.  (*Dewberry*, *supra*, 51 Cal.2d at p. 554.)  The court also instructed the jury that if there was any doubt as to whether the killing was manslaughter or justifiable

11

homicide, the defendant was to be acquitted. (*Ibid.*) The court refused a general defense instruction that would have told the jury that if it found the defendant was " 'guilty of an offense included within the charge . . . , but entertain a reasonable doubt as to the degree of the crime of which he is guilty, it is your duty to convict him only of the lesser offense.' " (*Ibid.*) The defendant argued that since the instructions on manslaughter were not accompanied by that further instruction, the jury was given the impression that the rule requiring a finding of guilt of the lesser offense applied only as between degrees of murder. (*Id.* at p. 555.)

The California Supreme Court agreed, explaining that the defendant's proposed instruction went to the defense of reasonable doubt of defendant's guilt of second degree murder, was responsive to issues raised by the evidence, and was essential to cure the misleading effect of its absence in light of the other instructions given. (*Dewberry*, *supra*, 51 Cal.2d at p. 557.) "The failure of the trial court to instruct on the effect of a reasonable doubt as between any of the included offenses, when it had instructed as to the effect of such doubt as between the two highest offenses, and as between the lowest offense and justifiable homicide, left the instructions with the clearly erroneous implication that the rule requiring a finding of guilt of the lesser offense applied only as between first and second degree murder." (*Ibid.*) The case was close on the facts; there was evidence equally warranting a finding that the offense was manslaughter, and thus the error was prejudicial. (*Id.* at pp. 557, 558.)

In *People v. Musselwhite*, *supra*, 17 Cal.4th 1216, the California Supreme Court rejected a claim of *Dewberry* error where the defendant contended the trial court erred by

12

failing to specifically instruct the jury that if it had a reasonable doubt whether he was guilty of attempted murder, but believed he was guilty of assault with a deadly weapon, the jury should give him the benefit of the doubt and find him guilty of the lesser offense. (*Musselwhite*, at p. 1261.) The defendant argued the omission confused the jurors because the trial court gave "benefit of the doubt" instructions for murder and manslaughter charges. (*Ibid*.) The Supreme Court disagreed. It pointed out the court had given the jury "generally applicable instructions governing its use of the reasonable doubt standard," which required the jury to find the defendant guilty of lesser included or related offenses where it had reasonable doubt as to any included or related offenses or degrees. (*Id.* at p. 1262.) Though the trial court had not instructed the jury specifically with respect to attempted murder and assault with a deadly weapon, that did not bring the case within *Dewberry* because the trial court gave another instruction that "fulfilled the same function" as the defendant's proffered instruction, that is, it obligated the jury to adopt an interpretation of the evidence pointing to the absence of specific intent where the evidence was susceptible to two reasonable interpretations. (*Musselwhite*, at pp. 1262-1263.)

In *People v. Barajas*, *supra*, 120 Cal.App.4th 787, the appellate court rejected the defendant's claim that the trial court's failure to instruct the jury with CALJIC No. 8.72 was prejudicial error under *Dewberry*. (*Barajas*, 120 Cal.App.4th at p. 794.) It held *Dewberry* was satisfied by the court's instruction: " '[I]f you . . . are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may, nevertheless, convict on a lesser crime, if you are convinced beyond a reasonable doubt

that the defendant is guilty of the lesser crime.  (*Barajas*, at p. 792.)  As to this instruction (CALJIC No. 17.10), the court in *Barajas* stated, "[W]hen its blanks are filled in for murder and manslaughter, [it] is logically equivalent to CALJIC No. 8.72.  If a jury is convinced beyond a reasonable doubt that a defendant is guilty of either a greater or lesser offense, this can only be because it has a reasonable doubt about elements of the greater offense and no reasonable doubt about any elements of the lesser.  CALJIC No. 8.72 does the same."  (*Barajas*, 120 Cal.App.4th at p. 793.)

B.  *Analysis*

None of the CALCRIM instructions provided to the jury stated the law using the same "benefit of the doubt" language as CALJIC No. 8.72, nor did they specifically describe the circumstance of the jury having a reasonable doubt between greater and lesser offenses.  But jury instructions require no particular form.  (See *People v. Fiu* (2008) 165 Cal.App.4th 360, 370.)  And the absence of such language does not result in *Dewberry* error.  As the foregoing authorities instruct, we review the entirety of the jury instructions to ascertain whether the jury was properly advised of the principles expressed in *Dewberry*: in short, that the prosecution must prove guilt beyond a reasonable doubt.  (*Dewberry*, *supra*, 51 Cal.2d at p. 556.)  More specifically in this context, *Dewberry* is satisfied when the jury is instructed that if it finds the prosecution has not proven the elements of the greater offense beyond a reasonable doubt, then the defendant can be found guilty of the lesser offense if that offense has been proven beyond a reasonable doubt.  (See *People v. Barajas*, *supra*, 120 Cal.App.4th at p. 794.)

14

Applying these standards, we reject Kruzik's claim that the jury was not given any instruction that explained the effect of reasonable doubt on the choice between murder and manslaughter. Rather, the trial court gave the jury generally applicable instructions that made clear the burden of proof required to establish either second degree murder or the lesser included offenses of voluntary and involuntary manslaughter, and directed the jury what to do if it entertained reasonable doubts as to Kruzik's guilt as to second degree murder.

As stated above, the trial court instructed the jury on second degree murder, voluntary manslaughter, and involuntary manslaughter. Before instructing the jury as to three homicide crimes and their respective elements, the court explained the reasonable doubt standard, telling the jury the People had to prove Kruzik guilty beyond a reasonable doubt, and he was entitled to an acquittal if the evidence did not prove him guilty beyond a reasonable doubt. It specifically told the jury that to prove murder or voluntary manslaughter, as opposed to involuntary manslaughter, the prosecution had "the burden of proving beyond a reasonable doubt that the defendant acted with an intent to kill or with a conscious disregard for human life. *If the People have not met either of these burdens, you must find the defendant not guilty of murder and not guilty of voluntary manslaughter.*" The jurors were aware of their obligation to acquit Kruzik of second degree murder or voluntary manslaughter if they did not believe, beyond a reasonable doubt, that he had the requisite intent.

Additionally, in connection with the verdict forms, the court explained to the jury it "can accept a verdict of guilty or not guilty of voluntary manslaughter or involuntary

15

manslaughter *only if* [the jury has] found the defendant not guilty of second degree murder." CALCRIM No. 642, like CALJIC No. 17.10 in *Barajas*, told the jury if it found Kruzik not guilty of the greater crime (second degree murder), it could find him guilty of manslaughter. We observe that the drafters intended CALCRIM No. 642 to satisfy *Dewberry* in homicide cases as this one, in which second degree murder is the greatest offense and one or more lesser offenses is submitted to the jury. (Bench Notes to CALCRIM No. 642 (2014 ed.) p. 405.)

Thus, the instructions given to the jury taken as a whole adequately covered defendant's point. The combined CALCRIM instructions[6] did not leave misleading impressions nor did they restrict the jury's ability to consider the lesser offense of manslaughter, and they provided the jury with sufficient information to comply with *Dewberry*'s principles. There was no instructional error.

### III. *Kruzik Has Not Demonstrated Prejudice*

Even if Kruzik was somehow able to establish *Dewberry* error, we would conclude it was harmless. We look to the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836: whether it is reasonably probable that, in the absence of the error, the result would have been more favorable to the defendant. (*Dewberry*, *supra*, 51 Cal.2d at p. 558; see also *People v. Crone* (1997) 54 Cal.App.4th 71, 78.) Here, there is no indication the jury entertained reasonable doubt as to whether Kruzik committed second

---

6    We agree that CALJIC instructions do not serve as a benchmark by which to adjudicate the correctness of CALCRIM instructions. (See *People v. Lawrence* (2009) 177 Cal.App.4th 547, 554.)

degree murder, and the evidence is abundant to support its verdict. The autopsy of A.A.'s body revealed evidence of three impacts to the head. The forensic pathologist opined that A.A.'s death was a homicide caused by blunt force trauma to the head. Kruzik admitted to striking A.A. four times to her head, causing her to lose consciousness after the final blow.

At trial, the jury considered Kruzik's defenses and found beyond a reasonable doubt that he acted with malice aforethought. Kruzik does not explain how the jury's question concerning implied malice reflects confusion about that matter, and we conclude it does not. We conclude that even if the jury had been instructed with CALJIC No. 8.72 or some other similar instruction, it is not reasonably probable it would have convicted Kruzik of the lesser offense of manslaughter.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

17