Filed 7/18/25  P. v. Dorsey CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>         Plaintiff and Respondent,<br>v.<br><br>JERAMY RONELL DORSEY,<br>         Defendant and Appellant. | A168340<br><br>(Contra Costa County<br>Super. Ct. No. 02003348497) |

A jury acquitted Jeramy Ronell Dorsey of first degree murder but convicted him of second degree murder.  On appeal, he contends the trial court's failure to instruct the jury with former CALCRIM No. 640 — a pattern instruction guiding jurors regarding deliberations and completion of verdict forms for defendants charged with first degree murder — requires reversal.  He argues that without this instruction, the jury was unaware of its obligation to resolve any reasonable doubts regarding his guilt as between greater and lesser included offenses, i.e., first and second degree murder and manslaughter, in his favor — finding him guilty of the lesser offense.  We affirm.

## BACKGROUND

Dorsey had an ongoing contentious relationship with his uncle, Surako Follings, Sr., with whom he occasionally worked and lived.  In one instance, Follings interrogated Dorsey about his life choices and family but became

1

upset when he failed to answer. Follings swung his fist at Dorsey and threw him to the ground. On another occasion, Follings accused Dorsey, who was sitting in his car, of brandishing a gun while he was walking by. According to Dorsey, Follings then kicked the driver's side door. In text messages to an associate later that day, Dorsey complained his uncle was acting like a victim, stating "I want to dent his shit like mines is," and "I'm gonna finish him the same day."

Text messages between Dorsey and Follings became increasingly heated. Early one morning in May 2021, Dorsey texted him, "You are a bitch." Follings responded by insulting him and conveying a physical threat. Dorsey replied that he was waiting at Follings's house — sending pictures of the front of the house and its security gate — and stated, "I'm gone [*sic*] take care of all that after your [*sic*] gone. I promise." Later, Follings texted an apology and expressed his love for Dorsey. Dorsey responded: "Your [*sic*] a bitch. . . . U know I'm gone [*sic*] fuck you up when I see you."

The next day, Dorsey arrived at Follings's home with a gun and fully loaded magazine. Dorsey's aunt heard Follings and Dorsey yelling at each other — Dorsey was brandishing the gun at Follings, who was unarmed. Follings either leaned forward or looked at the ground, and Dorsey raised the firearm and began shooting — three gunshots to Follings's head, and six more to his body — killing him.

As relevant here, Dorsey was charged with first degree murder and a personal and intentional discharge of a firearm causing death enhancement.[1]

---

[1] He was also charged with the attempted premeditated murder of a peace officer, who responded to the shooting, with a personal and intentional discharge of a firearm allegation (§§ 187, 664, 12022.53, subd. (c)); and assault of Dorsey's aunt with a firearm, based on her belief Dorsey raised his firearm at her (§ 245, subd. (a)(2)).

(Pen. Code, §§ 187, subd. (a), 12022.53, subd. (d), undesignated statutory references are to this code.) At trial, the court rejected Dorsey's request that the jury be instructed with CALCRIM No. 640. That instruction provides, in relevant part, "You will be given verdict forms for guilty and not guilty of first degree murder, second degree murder, and voluntary manslaughter . . . . [¶] You may consider these different kinds of homicide in whatever order you wish, but I can accept a verdict of guilty or not guilty of second degree murder only if all of you have found the defendant not guilty of first degree murder, and I can accept a verdict of guilty or not guilty of voluntary manslaughter only if all of you have found the defendant not guilty of both first and second degree murder. [¶] . . .To return a verdict of guilty or not guilty on a count, you must all agree on that decision." (Former CALCRIM No. 640.) The instruction, the court explained, was superfluous because the guidance would be provided in other instructions, as well as on each verdict form.

Indeed, the first degree murder verdict form explained that if the jury found Dorsey not guilty of that crime, it must proceed to the lesser included offense of second degree murder. The second degree murder verdict form similarly explained that if the jury found Dorsey not guilty of second degree murder, it must proceed to the lesser included offense of voluntary manslaughter. The jury found Dorsey not guilty of first degree murder, guilty of second degree murder, and found the firearm enhancement true.[2] The trial court sentenced Dorsey to 35 years to life in prison — 15 years to life for murder, and 20 years for the firearm enhancement.

## DISCUSSION

---

[2] The jury also found Dorsey not guilty of attempted murder and was unable to reach a verdict on the firearm assault charge, as to which the trial court declared a mistrial and dismissed.

3

Dorsey contends the trial court prejudicially erred by failing to provide the jury with former CALCRIM No. 640.  He argues the instruction was necessary to inform the jury it must reach a unanimous verdict on the degree of murder or criminal homicide; it must acquit him of a greater offense if it had a reasonable doubt on that charge; and if the evidence was sufficient to support a finding of guilt on both the charged and lesser included offense, it must find him guilty only of the lesser offense.  (*People v. Dewberry* (1959) 51 Cal.2d 548, 555.)  After reviewing the correctness of the jury instructions — presuming jurors are capable of understanding and correlating all the instructions — we disagree.  (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Jurors must be instructed on general principles of law relevant to the issues presented by the evidence, even absent a request.  (*People v. Souza* (2012) 54 Cal.4th 90, 115.)  "[N]o particular form is required; the instructions must be complete and a correct statement of the law."  (*People v. Fiu* (2008) 165 Cal.App.4th 360, 370.)  We determine the correctness of the jury instructions from the entire charge, " 'not from a consideration of parts of an instruction or from a particular instruction.' "  (*People v. Carrington* (2009) 47 Cal.4th 145, 192.)  Indeed, there is no duty to give instructions that are repetitious of other instructions given.  (*People v. Barajas* (2004) 120 Cal.App.4th 787, 791.)  Relevant here, a court must instruct the jury that if "the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense," and it has "reasonable doubt as to which offense has been committed," it must find him guilty *only* of the lesser offense.  (*People v. Dewberry, supra,* 51 Cal.2d at p. 555.)  But instructions on this point are adequate if the jury receives "several generally applicable

4

instructions governing its use of the reasonable doubt standard." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1262 (*Musselwhite*).)

The jury instructions given here encapsulated the principles that Dorsey contends were lacking. For instance, CALCRIM No. 220 told the jury the prosecution must prove he was guilty beyond a reasonable doubt, otherwise "you must find him not guilty." CALCRIM No. 3550 explained any verdict must be unanimous. (*People v. Avalos* (1984) 37 Cal.3d 216, 228; compare with former CALCRIM No. 640 [requiring a unanimous guilty verdict].) Moreover, the jury was provided instructions regarding second degree murder and all lesser included offenses, such as voluntary manslaughter. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) And the first and second degree murder verdict forms clearly indicated that the jury must first find Dorsey not guilty of first degree murder before making a finding regarding second degree murder. (Compare with former CALCRIM No. 640 ["If all of you agree that the defendant is not guilty of first degree murder but also agree that the defendant is guilty of second degree murder, complete and sign the form for not guilty of first degree murder and the form for guilty of second degree murder"].) Read together, the instructions informed the jury that if it found Dorsey guilty of murder, it was required to agree on the *degree* of murder. (CALCRIM No. 3550; § 1157; *Musselwhite*, *supra*, 17 Cal.4th at p. 1248.)

More importantly, the instructions told the jury, "where it had a reasonable doubt as to *any included or related offenses or degrees*, to find defendant guilty of the lesser included or related offense or lesser degree, that is, to give defendant the benefit of any reasonable doubts it may have had." (*Musselwhite*, *supra*, 17 Cal.4th at p. 1262; § 1097.) The trial court provided the jury with CALCRIM No. 224, instructing that if it could "draw

5

two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence." The instructions also explained that if the jury found Dorsey committed murder, it was second degree murder "unless the People have proved beyond a reasonable doubt" he committed first degree murder. (CALCRIM Nos. 520 [articulating elements required for murder], 521 [first degree murder conviction requires prosecution to demonstrate "beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime"].) In sum, the jury was instructed that any reasonable doubt regarding guilt of first degree murder must be resolved in his favor, resulting in a conviction of a lesser offense. (*Musselwhite*, at p. 1262.)

Similarly, CALCRIM No. 570 — describing circumstances under which a killing that is otherwise murder is reduced to voluntary manslaughter — and CALCRIM No. 571 — requiring the prosecution to prove a defendant was not acting in imperfect self-defense — both explained the jury *must* find Dorsey not guilty of murder if the prosecution failed to demonstrate beyond a reasonable doubt that he was not acting in the heat of passion or in imperfect self-defense. As such, the jury was properly told that the "rule requiring a finding of guilt of the lesser offense" included voluntary manslaughter — these reasonable doubt instructions "redounded to [Dorsey's] benefit." (Compare with *People v. Dewberry*, *supra*, 51 Cal.2d at pp. 555, 557 [court error where instructions left "clearly erroneous implication that the rule requiring a finding of guilt of the lesser offense applied only as between first and second degree murder"]; *Musselwhite*, *supra*, 17 Cal.4th at p. 1262.) And as above, the second degree murder verdict form instructed the jury to proceed to voluntary manslaughter *only* if it determined Dorsey was not

6

guilty of second degree murder. (Compare with former CALCRIM No. 640 ["If all of you agree that the defendant is not guilty of first degree murder and not guilty of second degree murder, but also agree that the defendant is guilty of voluntary manslaughter, complete and sign the forms for not guilty of first degree murder and not guilty of second degree murder and the form for guilty of voluntary manslaughter"].)

In sum, viewing the instructions as a whole, the court correctly apprised the jury regarding the relevant principles of law. There was no instructional error. In light of this conclusion, we do not address Dorsey's arguments that any error was prejudicial.

## DISPOSITION

The judgment is affirmed.

_____

RODRÍGUEZ, J.


WE CONCUR:


_____

TUCHER, P. J.


_____

FUJISAKI, J.


A168340; *People v. Dorsey*