Filed 10/16/14  P. v. Bernal CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>NICANDRO CORTEZ BERNAL,<br><br>  Defendant and Appellant. | B251438<br><br>(Los Angeles County<br>Super. Ct. No. TA125356) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kelvin D. Filer, Judge.  Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Nicandro Cortez Bernal ("Defendant") appeals his convictions of second-degree murder and attempted murder, for which he is currently serving a 35-years-to-life sentence. He argues that the verdicts are tainted by three instructional errors. We review the instructions de novo (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1311-1312), and conclude there was no error.

## FACTS AND PROCEDURAL HISTORY

Defendant and his 15-year-old nephew visited a taco stand. They exchanged words and punches with Juan Medina ("Medina"), one of the stand's employees, but eventually left. They later returned, but this time Defendant brought a shotgun and his nephew brought a knife. Medina had since tucked a BB gun into his apron. Upon arriving, Defendant drew his shotgun, Medina fled, and Defendant shot him in the back. An unknown shooter shot Defendant's nephew in the chest with a .38- or .357-caliber bullet. Medina lived; the nephew did not.

The People charged Defendant with (1) the attempted murder of Medina (Pen. Code, §§ 664, 187);[1] and (2) the murder of his nephew, on the theory that Defendant's provocative act of shooting at Medina set in motion the chain of events resulting in his nephew's death (§ 664). The jury found Defendant's acts were not premeditated, and accordingly found him guilty of the attempted (but not premeditated) murder of Medina, and the second (but not first) degree murder of the nephew. The court imposed a sentence of 35 years to life on the second degree murder charge, based on 15 years for the murder plus 20 years for a firearm enhancement. The court stayed the attempted murder sentence under section 654.

Defendant appeals.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

**DISCUSSION**

## I.      Voluntary Intoxication Instruction

Section 29.4, subsection (b), provides that voluntary intoxication may negate (1) "specific intent" (which, for homicide, is the intent to kill); (2) whether the defendant "premeditated" or "deliberated"; and (3) "whether the defendant . . . harbored express malice aforethought."  The judge used CALCRIM No. 625, which informs the jury that voluntary intoxication can negate "the intent to kill" and "deliberation and premeditation"; it says nothing about express malice.  Defendant argues that CALCRIM No. 625's silence on express malice renders it facially invalid.  We reject this argument for two reasons.

First, the defect Defendant alleges is not relevant to this case.  The jury was instructed that murder can be based upon a finding of "express malice," but was further instructed that "[t]he defendant acted with express malice if he unlawfully intended to kill."  Because this instruction--the only one to use the phrase "express malice"--equated express malice with intent to kill, CALCRIM No. 625 adequately conveyed the availability of voluntary intoxication as a defense.

Even if the jury had not been instructed that intent to kill was interchangeable with express malice, the courts have implicitly equated the two terms.  (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1384 ["express malice and intent to kill are, in essence, one and the same"].)  Defendant argues, as the now-depublished decision in *People v. Rios* (2013) 222 Cal.App.4th 704 noted, that the two terms do not completely overlap because it is possible for a defendant to intend to kill but not act with express malice, such as when he kills in the heat of passion.  Because this situation also requires proof of intent to kill, voluntary intoxication remains a defense.  So the absence of complete overlap is irrelevant to Defendant's argument.

## II.      The *Dewberry* Principle

In *People v. Dewberry* (1959) 51 Cal.2d 548 (*Dewberry*), our Supreme Court reaffirmed the longstanding principle that "when the evidence is sufficient to support a

3

finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." (*Id.* at p. 555.) Defendant argues that the trial court violated this so-called *Dewberry* principle when it read the jury CALCRIM Nos. 3517 (as to the attempted murder count) and 640 (as to the murder count). These instructions inform the jurors that they (1) may convict a defendant of a lesser crime only after unanimously agreeing that he is not guilty of the greater crime; and (2) must stop deliberating and tell the judge if they hang on the greater crime. Defendant contends that *Dewberry* requires a judge also to instruct the jury that any doubts regarding a defendant's guilt as between the greater and lesser offenses be resolved in favor of the lesser offense. (Defendant also cites section 1097, but his argument deals with lesser-included offenses more than lesser degrees of the same offense, and is therefore more directly addressed by *Dewberry* than section 1097's express concern with lesser degrees.) Defendant's argument is without merit.

*Dewberry* has been interpreted two ways. Most cases have interpreted *Dewberry* narrowly to mean that a jury must acquit the defendant of a greater offense if it is unconvinced of his guilt beyond a reasonable doubt. (*People v. Barajas* (2004) 120 Cal.App.4th 787, 793-794; *People v. Gonzalez* (1983) 141 Cal.App.3d 786, 794 & fn. 8, disapproved on other grounds in *People v. Kurtzman* (1988) 46 Cal.3d 322, 330; *People v. St. Germain* (1982) 138 Cal.App.3d 507, 521-522; *People v. Crone* (1997) 54 Cal.App.4th 71, 75-76.) *Dewberry* itself noted this "narrow[ly] constru[ction]." (*Dewberry*, 51 Cal.2d at 556.) On this basis, the above-cited Court of Appeal cases upheld verdicts when a jury was instructed (per CALJIC No. 17.10) only that it could find a defendant guilty of a lesser crime if not persuaded of his guilt of the greater crime. CALCRIM Nos. 3517 and 640 have the same mandate.

Defendant argues that CALCRIM Nos. 3517 and 640 are unlike CALJIC No. 17.10 in two respects. First, Defendant states that CALCRIM Nos. 3517 and 640, unlike CALJIC No. 17.10, dictate the order in which the jury may deliberate about the crimes

4

(first greater, then lesser). (Accord *People v. Berryman* (1993) 6 Cal.4th 1048, 1073 [prohibiting such instruction], overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800.) This is incorrect. CALCRIM Nos. 3517 and 640 leave it up to the jury to decide the order in which it considers each crime and the relevant evidence. Second, Defendant asserts that CALCRIM Nos. 3517 and 640, unlike CALJIC No. 17.10, require the jury to report to the judge if it is deadlocked on the greater offense (rather than proceeding directly to consider the lesser offense). However, this step ostensibly exists to give the judge the opportunity to assess whether further deliberations on the greater offense might be fruitful; if not, the jury would be told to deliberate on the lesser offense. We do not see how this intermediate step offends *Dewberry*.

*Dewberry* can also be read broadly to require a separate "tie goes to the lesser offense" instruction. But cases so holding have also ruled that the absence of such an instruction is harmless when the jury is instructed, as it was here, that it may only convict a defendant of a greater offense if all jurors agree. (*People v. Reeves* (1981) 123 Cal.App.3d 65, 69-70 [so holding], *overruled on other grounds, People v. Sumstine* (1984) 36 Cal.3d 909.)

### III. Manslaughter Instructions

CALCRIM Nos. 522, 570, 571, 603, and 604 reflect the legal reality that homicides are ranked by severity (first-degree murder, then second-degree murder, then manslaughter), and do so by noting that certain defenses (such as imperfect self-defense and provocation) "reduce" a greater offense to a lesser one. Defendant acknowledges that these instructions are legally accurate, (*People v. Moye* (2009) 47 Cal.4th 537, 549), but contends that referring to the hierarchy of offenses is improper for two reasons. He asserts that it erects an unconstitutional presumption in favor of guilt, and cites *People v. Owens* (1994) 27 Cal.App.4th 1155 (*Owens*) for support. But *Owens* involved an instruction that told the jury that the prosecution had "introduced evidence tending to prove" elements of the offense. (*Id.* at pp. 1158-1159.) The instructions here did no such thing. Defendant further argues that the "reduc[tion]" language also implicitly tells the

5

jury to structure its deliberations in a particular order.  As we discuss above, the instructions in this case were expressly to the contrary.

## DISPOSITION

The judgment is affirmed.

**<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>**


HOFFSTADT, J.


We concur:


ASHMANN-GERST, Acting P. J.


CHAVEZ, J.


6